**Cynthia Louise HARRELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 63149–63159.**

Court of Criminal Appeals of Texas, Panel No. 1.

Sept. 15, 1982.

On Rehearing Jan. 12, 1983.

---

James P. Finstrom, Dallas, for appellant.

Henry Wade, Dist. Atty., Steve Wilensky, Norman Kinne and Rider Scott, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before ROBERTS, TOM G. DAVIS and W.C. DAVIS, JJ.

## OPINION

ROBERTS, Judge.

These appeals are from convictions for obtaining a controlled substance by fraud. All eleven of these cases were tried before the same jury. The jury assessed punishment in each case at confinement for twenty years.

Eight of these cases (Nos. 63,149; 63,150; 63,152; 63,153; 63,154; 63,155; 63,156; and 63,157) involved the obtaining of dilaudid. The indictment in each of these eight cases alleges that the appellant did "knowingly and intentionally acquire and obtain possession of a controlled substance, namely, DILAUDID by misrepresentation, fraud, forgery, deception and subterfuge...." In one ground of error common to all eight of these cases, the appellant contends that these indictments are fundamentally defective because dilaudid was not specifically listed in any of the various schedules or penalty groups of controlled substances contained in V.A.C.S., Article 4476–15. We agree.

In *Ex parte Everett*, 635 S.W.2d 554, (Tex.Cr.App.1982), we held that a virtually identical indictment was fundamentally defective for failure to allege why dilaudid is a controlled substance. Accordingly, we hold that the indictments in Cause Nos. 63,149; 63,150; 63,152; 63,153; 63,154; 63,155; 63,156; and 63,157 are fundamentally defective.

In Cause No. 63,151, the indictment alleged that the appellant obtained desoxyn. Like dilaudid, desoxyn was not specifically named in any of the schedules or penalty groups of controlled substances. Accordingly, we hold that the indictment in Cause No. 63,151 is also fundamentally defective.

In two grounds of error, the appellant also claims that the evidence is insufficient in these cases. First, she contends

that the evidence is insufficient because the prescriptions set out in the indictments show that they had been cancelled. The pharmacists who filled these prescriptions testified that they would not have filled a prescription which had been cancelled. The appellant argues that the proof, therefore, fails to support all the allegations of the indictments. We overrule this contention.

In *Graham v. State,* 546 S.W.2d 605 (Tex. Cr.App.1977), this court held that an indictment which alleged in the statutory language that a defendant committed the offense and alleged the means used to commit the offense, such as the passing of a forged prescription, was sufficient to allege an offense under V.A.C.S., Article 4476–15, Section 4.09(a)(3). In *Ex parte Holbrook,* 609 S.W.2d 541 (Tex.Cr.App.1980), this court held that when an indictment sets out the offense in the above manner "neither the purport nor the tenor of that prescription is of any consequence in alleging the offense." *Id.* at 545.

Since the tenor of the prescription is of no consequence in alleging the offense, we may regard it as surplusage which the State was not bound to prove. Therefore, the fact that the pharmacists testified that they would not have filled the prescriptions set out in the indictments (with the cancellations present upon them) does not render the evidence insufficient.

■ Second, the appellant contends in seven of the cases that the evidence is insufficient because the testimony showed that the prescriptions were handed to drug clerks, rather than to the pharmacists named in the indictments. For two reasons, we overrule this contention. First, for the same reasons as set out above, the allegation of the person to whom the prescription was passed was surplusage which the State was not bound to prove. Second, in every case, the pharmacists testified that they were present at the time the appellant gave the clerks the prescriptions, that the clerks then handed the prescriptions to the pharmacists, that the pharmacists then filled the prescriptions, that the pharmacists then handed the drugs to the clerks,

and that the clerks in turn handed the drugs to the appellant. This testimony is sufficient to show that the appellant "passed" the prescriptions to the named pharmacists. The fact that the drug clerks acted as intermediaries in the physical acts of delivering the paper to the pharmacists is of no legal significance.

The remaining grounds of error in Cause Nos. 63,149; 63,150; 63,151; 63,152; 63,154; 63,155; 63,156; and 63,157 do not question the sufficiency of the evidence. In light of our holding that the indictments in these causes are fundamentally defective, we need not address the remaining grounds of error.

■ We turn now to the remaining grounds of error in Cause Nos. 63,158 and 63,159. She first contends, in both cases, that the trial court erred in denying her motion to quash the informations. The motion alleged that the informations, which pleaded, conjunctively, the five ways of committing the offense, failed to give her adequate notice. This contention has no merit, for this court has consistently held that it is permissible to plead, conjunctively, that the defendant violated a statute by all the means set forth in the statute.

■ Next, the appellant contends that the informations are fundamentally defective for failure to allege that she knew the prescriptions were forged, that the named doctors did not authorize the making of the prescriptions, that the appellant knew that the doctors did not authorize the prescriptions. In *Graham v. State,* supra, we held that an indictment for this offense need not set out the elements of passing a forged writing. For this reason, the State need not set out any of the allegations urged by the appellant.

■ The appellant also contends that the trial court fundamentally erred in failing to set out or define the elements of forgery in the charge to the jury. For the same reasons, we hold that it was not fundamental error to fail to include a definition of forgery in the charge.

The appellant also contends that these informations are fundamentally defective because the substances named in the tenor clauses vary from the substances named in the "purport" clauses of the informations. This contention has been rejected in Ex parte Holbrook, supra. The ground of error is overruled.

Next, the appellant contends that the penitentiary packet admitted into evidence during the punishment phase of the trial was inadmissible because the judgment and sentence were not signed by the trial judge. In *Gutierrez v. State,* 456 S.W.2d 84 (Tex.Cr.App.1970), we held that the validity of a conviction is not affected by the failure of a judge to sign the judgment and sentence. The ground of error is overruled.

Finally, the appellant contends that the prosecutor improperly directed the jury to consider the possibility of parole in setting the appropriate punishment for the appellant. During his closing argument, the defense attorney had argued:

"... I think that one conclusion that I can draw and I think you would draw is that the people who violate the law if they have done it while they are younger and get to an age where it is no longer worthwhile for them to do that. You come to a point where you say the use of drugs, the writing of prescriptions, 'I don't want to do it anymore for what it's cost me'. She went to the penitentiary one time and she didn't feel that way when she got out or if she felt that way as Mr. Harrell told you for a while the feeling left her and somehow she got back into drugs again, but I submit to you she will, you can look at her birth date, it's in these penitentiary records, I think she's 32 years old now, she'll be older than that when she is released from the penitentiary and I think you can rightfully take into consideration the fact that she is going to change her ways probably if you gave her the minimum sentence, probably, and the reason I say probably is because of Harrel's [sic] testimony, that's what is important to me in that regard, they think there's hope for

her when they no reason to have to testify [sic] in this case, they say there is hope for her and these are the people that know her best and I think the reason is that they, rather I'm saying it the right way about getting to a certain age or rather it's your maturity or whether it's just that you get to a point where you are not going to break the law any more because it's not worth it, it's too expensive, it's hard on your health, bad on your kids, whatever it is, it's going to happen and they realize that in their way...."

The prosecutor's argument to the jury included the following:

"... You know, Mr. Finstrom pointed out that at some point in a person's life he reaches that point where it's no longer to his best interest to violate the law, he reaches an age or for whatever reason Mr. Finstrom pointed out, but I don't think that you can count on everybody ever reaching that particular time. You can't say that someone at some point in life that everyone is going to reach the point in time when they are no longer going to violate the law, you can't say that, if that were true, we would have a cut-off on age for people who are in the penitentiary and we don't. If it were true, she should have reached that point a long time ago. How about the first time that she went to the penitentiary for the same kind of offense. And what kind of drug was it? It was a form of speed, only it was a weaker form of speed than she is now writing prescriptions for, so her addiction, if indeed she has one, I want to say a little bit more about that, was not cured the first time she went to the penitentiary, apparently. You know that she went to the penitentiary in 1975 on a 4 year sentence, which began in June of 1975 and her father-in-law tells you to the best of his recollection she was paroled in 1976 on a 4 year sentence, so you know it's going to take a substantial longer period of time, I submit to you—

"MR. FINSTROM: (interposing) We are going to object to that argument, the way it's phrased, it is encouraging the

jury to consider the parole status and violation of the Courts charged.

"THE COURT: Overruled. The jury has been instructed regarding the parole status. Go ahead."

The prosecutor should not have referred to the fact that the appellant had been paroled after serving one year of the earlier four year sentence (a fact which was in evidence). However, the remark does not appear to have been intended to persuade the jury to consider the state's parole laws in assessing punishment. Rather, the prosecutor's remark appears to have been a plea that the jury assess a substantially longer period of confinement than was previously assessed because the appellant had not been rehabilitated by her earlier period of confinement. In other words, she has not yet reached the age when it was "no longer worthwhile" for her to commit crimes. The ground of error is overruled.

The judgments in Cause Nos. 63,158 and 63,159 are affirmed.

The judgments in Cause Nos. 63,149; 63,-150; 63,151; 63,152; 63,153; 63,154; 63,155; 63,156; and 63,157 are reversed and the indictments are ordered dismissed.

### ON STATE'S MOTION FOR REHEARING

TEAGUE, Judge.

Appellant has appealed to this Court a total of eleven convictions, all predicated upon obtaining by forged prescriptions the drugs Dilaudid and Desoxyn. On original submission, a unanimous panel opinion of this Court, authored by Judge Truman E. Roberts, which opinion relied upon as its authority this Court's decision of *Ex parte Everett*, 635 S.W.2d 554 (Tex.Cr.App.1982), ordered nine of the convictions reversed because the substances named in the indictments, Dilaudid and Desoxyn, were not specifically listed in any of the various schedules or penalty groups of controlled substances contained in the Controlled Substances Act, and the indictments declared void did not allege why the drugs were controlled substances under the Act. We granted the State leave to file its' motions for rehearing in order that we might reconsider several of this Court's past decisions, namely, *Ex parte Everett,* supra; *Ex parte McClain,* 623 S.W.2d 140 (Tex.Cr.App. 1981); *Ex parte Roberts,* 623 S.W.2d 138 (Tex.Cr.App.1980); and *Ex parte Holbrook,* 609 S.W.2d 541 (Tex.Cr.App.1980). The State invites us to overrule *Ex parte Everett,* supra; and *Ex parte Holbrook,* supra, claiming they are in conflict with *Ex parte Roberts,* supra, and *Ex. parte McClain,* supra.

After having carefully considered the State's motions for rehearing, we will overrule them, sustain the panel opinion, decline the State's invitation to overrule the stated cases because there is no conflict, reaffirm the above cases, and hold that the nine indictments in issue on rehearing are fundamentally defective and void for failure to state offenses against the laws of this State.

In all but one of the nine indictments in issue on rehearing, it was alleged in pertinent part that the appellant did "unlawfully and intentionally acquire and obtain possession of a controlled substance, namely, DILAUDID by misrepresentation, fraud, forgery, deception, and subterfuge..." The remaining indictment in issue was in all things identical except it alleged the drug DESOXYN. See Art. 4476–15, Sec. 4.09(a)(3), V.A.C.S.[1]

---

1. Art. 4476–15, Sec. 4.09, V.A.C.S. provides:

 Sec. 4.09. (a) It is unlawful for any person knowingly or intentionally:

 (1) to distribute as a registrant a controlled substance classified in Schedule I or II, except pursuant to an order form as required by Section 3.07 of this Act;

 (2) to use in the course of the manufacture or distribution of a controlled substance a registration number which is fictitious, revoked, suspended, or issued to another person;

 (3) to acquire, obtain, or attempt to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge;

 (4) to furnish false or fraudulent material information in, or omit any material information from, any application, report, or other document required to be kept or filed under

The indictments in the remaining two convictions, which were affirmed, were not fundamentally defective because they properly alleged, not the trade names for the drugs, but the names as specifically listed in the Controlled Substances Act, eo nomine, hydromorphone and methamphetamine. Although all eleven of the indictments appear to have been prepared at or near the same time, we have been unable to ascertain from the record why the State carefully prepared the two valid indictments, but was unable to carefully prepare the remaining nine indictments in issue.

The appellant did not file leave to file a motion for rehearing in the causes affirmed, and the State makes no complaint in its motions for rehearing about the convictions that were affirmed; arguing only that the panel opinion was erroneous in holding the indictments void.

The record reflects that in each of the nine instances involved, the appellant presented forged prescriptions to employees of drug stores in order to obtain drugs, namely Dilaudid and Desoxyn, which are trade names for the controlled substances hydromorphone and methamphetamine. Neither Dilaudid nor Desoxyn are specifically listed by name in any penalty group of

the Controlled Substances Act, nor was it indicated in the indictments how the substances otherwise came within the provisions of the Act, nor was it stated in the indictments that the drugs came within a particular penalty group of the Act. Cf. *Ellerbee v. State,* 631 S.W.2d 480 (Tex.Cr. App.1982).

Although not determinative to the disposition we make of the State's motion for rehearing, we observe that *Ex parte McClain* and *Ex parte Roberts, supra,* involved convictions wherein the charges, for fraudulently passing to a named pharmacist a forged prescription *and* attempting to obtain by a forged prescription a narcotic drug, Diluadid, were brought under former penal code Art. 725b, Sec. 20, V.A.P.C. (1925). However, *Ex parte Everett* and *Ex parte Holbrook, supra,* involved offenses filed under Art. 4476–15, Sec. 4.09(a), supra; for obtaining the drug Dilaudid *and* attempting to obtain the drug Preludin by virtue of forged prescriptions. As noted, the charges at bar were also filed pursuant to Art. 4476–15, Sec. 4.09(a), supra.

Previously, by the provisions of the 1925 Penal Code, see Art. 725b, Sec. 20(1), V.A. P.C. (1925),[2] in order to properly allege in a

this Act, or any record required to be kept by this Act; or

(5) to make, distribute, or possess any punch, die, plate, stone, or other thing designed to print, imprint, or reproduce the trademark, trade name, or other identifying mark, imprint, or device of another or any likeness of any of the foregoing upon any controlled substance or container or labeling thereof so as to render the controlled substance a counterfeit substance.

(b) An offense under Subsection (a) with respect to:

(1) a controlled substance classified in Schedule I or II is a felony of the second degree;

(2) a controlled substance classified in Schedule III is a felony of the third degree;

(3) a controlled substance classified in Schedule IV or V is a Class B misdemeanor.

2. Art. 725b, Sec. 20, V.A.P.C. provides:

Sec. 20. (1) No person shall obtain or attempt to obtain a narcotic drug, or procure or attempt to procure the administration of a narcotic drug, (a) by fraud, deceit, misrepresentation, or subterfuge; or (b) by the forgery or alteration of a prescription or of any written

order; or (c) by the concealment of a material fact; or (d) by the use of a false name or the giving of a false address.

(2) Information communicated to a physician in an effort unlawfully to procure a narcotic drug, or unlawfully to procure the administration of any such drug, shall not be deemed a privileged communication.

(3) No person shall willfully make a false statement in any prescription, order, report, or record, required by this Act.

(4) No person shall, for the purpose of obtaining a narcotic drug, falsely assume the title of, or represent himself to be, a manufacturer, wholesaler, apothecary, physician, dentist, veterinarian, or other authorized person.

(5) No person shall make or utter any false or forged prescription or false or forged written order.

(6) No person shall affix any false or forged label to a package or receptacle containing narcotic drugs.

(7) The provisions of this Section shall apply to all transactions relating to narcotic drugs under the provisions of Section 8 of this Act, in the same way as they apply to transactions under all other Sections.

charging instrument that a drug was obtained or attempted to be obtained by a forged prescription, it was incumbent upon the State to specifically allege therein that a particular narcotic drug was obtained or attempted to be obtained by the forged prescription. However, under Sec. 20(5) of the former penal statute, see footnote 2, supra, which proscribed the making or uttering of any false or forged prescription or false or forged written order, it was unnecessary to specifically allege in the charging instrument that the forged prescription was for any particular drug.

This Court, in both *Ex parte Roberts* and *Ex parte McClain,* supra, in deciding whether the indictments in those causes were fundamentally defective, for failure to allege offenses pursuant to Sec. 20(1), held that the indictments were not fundamentally defective pursuant to Sec. 20(5), because the charging instruments did properly allege offenses against the law. See also *Ex parte Bonsal,* 623 S.W.2d 356 (Tex.Cr.App. 1981).

*Ex parte Holbrook,* supra, and *Ex parte Everett,* supra, involved offenses brought pursuant to Art. 4476–15, Sec. 4.09, supra. The holdings in those causes have as their foundation the principle of law that was stated in this Court's decision of *Ex parte Wilson,* 588 S.W.2d 905, 908–909 (Tex.Cr. App.1979), where the offense alleged was possession of the drug Phentermine, a drug not named per se in a penalty group of the present Controlled Substances Act. In *Wilson,* this Court stated the following principle:

"To state the rule generally, we hold that in a prosecution under the Controlled Substances Act [Art. 4476–15, V.A.C.S.] for the *manufacture, delivery,* or *possession* of a substance not specifically named in a penalty group but which is otherwise described in a penalty group (for example, an isomer of methamphetamine), such description is an essential element of the offense which must be alleged in the indictment in order to state an offense. The same rule applies to prosecutions under the Dangerous Drugs Act involving a drug not specifically named in Sec. 2(a) but which is otherwise decribed therein (for example, a legend drug.) [Emphasis Added].

The State, through its State Prosecuting Attorney, Hon. Robert Huttash, in the motions for rehearing he filed, in quoting from *Ex parte Roberts,* supra, argues that "the [name of the] particular controlled substance that the defendant was attempting to obtain is unimportant"; thus, the State asserts that the indictments in issue are not invalid instruments, but instead are valid charging instruments.

We acknowledge that this Court in *Ex parte Roberts* did state the following at page 139 of the opinion: "It is important to remember that the offense alleged is securing a controlled substance through fraud; the particular controlled substance that the defendant was attempting to obtain is unimportant." The State also argues in its briefs that *Everett,* supra, and *Holbrook,* supra, should be overruled, contending those decisions are in conflict with *Roberts.* We disagree with the State's argument for several reasons, and decline its invitation to overrule the above cases of this Court because we find no conflict.

The State, in its reliance upon *Ex parte Roberts,* supra, misreads the import of that decision. As previously noted, by the provisions of the 1925 Penal Code Statute, Art. 725b, Sec. 20(1), supra, which statute proscribed the obtaining or attempting to obtain a narcotic drug by fraud, which we find to be analogous to present Art. 4476–15, Sec. 4.09(a)(3), supra, in order to properly obtain a conviction for obtaining or attempting to obtain a drug by a forged prescription, it was incumbent upon the State to allege and prove that a particular narcotic drug was obtained or attempted to be obtained by fraud. See *Ex parte Wilson,* supra. However, under Sec. 20(5), of the former Penal Code, which proscribed the making or uttering of any false or forged prescription or false or forged written order, it was not necessary to allege and prove that the forged prescription was for any particular drug. In both *Ex parte Rob-*

erts and *Ex parte McClain,* the indictments under consideration were held to allege offenses pursuant to Sec. 20(5), which did not require that a forged prescription be for any particular narcotic drug; thus, there was no need to designate in the charging instrument any narcotic drug because under the statute the State was only required to allege and prove that the defendant made or uttered a false or forged prescription. *Ex parte McClain* specifically held that the indictment under consideration was sufficient to allege an offense under Sec. 20(5); thus, the Court in *Ex parte McClain* did not consider the indictment's sufficiency pursuant to Sec. 20(1).

Although we acknowledge that the opinion in *Ex parte Roberts,* supra, refers to Sec. 20(1), in considering the sufficiency of the indictment in that cause, we find it does so only in characterizing the defendant's contention in that cause. The Court specifically stated the following in *Roberts:* "Ex parte McClain controls the disposition of the petitioner's case, and we hold here as we did there that the indictment sufficiently alleges an offense under the provisions of Art. 725b, *Sec. 20(5),* V.A.P.C. (1925)." [Emphasis Added]. It is therefore apparent to us that the language in the State's motions for rehearing, "the particular controlled substance that the defendant was attempting to obtain is unimportant," which is taken from *Ex parte Roberts,* supra, was referring to a Sec. 20(5) allegation; not a Sec. 20(1) allegation. Since Sec. 20(5) is distinguishable from Sec. 4.09(a)(3), with which we are dealing here, the quoted language from *Ex parte Roberts* is inapplicable to the causes at Bar. *Ex parte Wilson,* supra, and its progeny, see *Ex parte Everett,* supra, have definitely settled the issue adversely to the State's argument, and *Ex parte Roberts* provides, for the reasons stated, no solace for the State. The State's argument is therefore overruled.

 There is yet another reason for the requirement that in order to properly allege an offense under Art. 4476–15, Sec. 4.09(a)(3), supra, it is necessary to allege in the charging instrument the particular name of the drug as it is listed in the Controlled Substances Act, or to otherwise state how the drug is subject to the Act, or to indicate in the charging instrument the penalty group under which the drug is listed. Sec. 4.09(b), *Id.,* provides for different penalties, with the penalty for the particular offense being dependent upon whether the controlled substance obtained, acquired, or attempted to be obtained by misrepresentation, fraud, forgery, deception, or subterfuge falls under Schedule I, II, III, IV, or V. A charging instrument will be held fundamentally defective if it fails to state the elements essential to determine the jurisdiction of the court to try the case. E.g., *Ellerbee v. State,* supra. In the instances at bar, by failing to state the statutory name of the drug acquired, obtained, or sought to be obtained by misrepresentation, fraud, forgery, deception, or subterfuge, as listed in the Controlled Substances Act, or by failing to state how the drug was nevertheless subject to the Act, or by failing to state the penalty group under which the drug is listed in the Act, the appellant was deprived of notice of the penalty that was attached to each of the particular offenses alleged against her.

We therefore hold that each of the above nine indictments are null and void.

Finding no merit in the State's motions for rehearing, they are overruled.