**Wendell Hollis OLER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–97–01229–CR.**

Court of Appeals of Texas, Dallas.

Aug. 4, 1999.

Discretionary Review Refused Oct. 13, 1999.

---

1. Appellant was advised by letter dated February 10, 1999, from the Clerk of this Court, that the $125 filing fee was due.

John D. Nation, Attorney at Law, Dallas, for Appellant.

Lisa L. Braxton Smith, Assistant District Attorney, Dallas, for State.

Before Justices LAGARDE, OVARD, and WRIGHT.

## OPINION

Opinion By Justice LAGARDE.

Appellant Wendell Hollis Oler appeals his conviction, after a trial before the court, of knowingly and intentionally possessing and attempting to possess a controlled substance, to-wit: DILAUDID, the generic name being HYDROMORPHONE, by misrepresentation, fraud, forgery, deception, or subterfuge. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.129(a)(4)(A) (Vernon Supp.1999). The court assessed punishment, enhanced by one prior conviction, at fifteen years' confinement. Appellant raises two issues: (1) Was the evidence sufficient to sustain his conviction? and (2) Was the indictment fundamentally defective for failure to plead an offense? For reasons that follow, we affirm the trial court's judgment.

### Factual & Procedural Background

Following the trial court's denial of appellant's motion to quash the indictment on the grounds that it failed to allege an offense, this case was tried before the court on stipulated facts.

In relevant part, the indictment charged appellant with:

> unlawfully, knowingly and intentionally possess[ing] and attempt[ing] to possess a controlled substance, namely: DILAUDID the Generic name being HYDROMORPHONE by misrepresentation, fraud, forgery, deception and subterfuge, in that said defendant did then and there present the same medical problem, to wit: "TRIGEMINAL NEURALGIA", and medical records to four (4) doctors within the time period beginning on April 19, 1993 and ending September 20, 1993 without informing each doctor of current and past treatment by the other doctors and did obtain·multiple prescriptions for DILAU-

DID in sequences as follows which are outside the scope of accepted medical practice and treatment:

| Date | Doctor | Dilaudid Received |
|---|---|---|
| 4–19–93 | Elliott | 100 tablets |
| 4–23–93 | Anthony | 100 tablets |
| 5–3–93 | McPhaul | 180 tablets |
| 5–7–93 | Elliott | 100 tablets |
| 6–1–93 | McPhaul | 180 tablets |
| 6–2–93 | Anthony | 200 tablets |
| 6–17–93 | Elliott | 100 tablets |
| 6–23–93 | Anthony | 200 tablets |
| 7–13–93 | Anthony | 200 tablets |
| 7–15–93 | Elliott | 100 tablets |
| 8–2–93 | McPhaul | 180 tablets |
| 8–4–93 | Elliott | 150 tablets |
| 8–16–93 | Merkin | 100 tablets |
| 8–19–93 | Anthony | 200 tablets |
| 9–17–93 | Merkin | 100 tablets |
| 9–20–93 | Elliott | 180 tablets |

To summarize, the indictment alleges that appellant received and processed sixteen prescriptions during a five-month period, from four different doctors, without disclosing material information and thereby fraudulently and deceptively gained possession of 2,370 tablets of Dilaudid, a controlled substance. *See* HEALTH & SAFETY CODE ANN. § 481.102(3)(A) (Vernon Supp. 1999).

During trial, the State introduced a written stipulation, signed by appellant personally, his defense counsel, and the State. It stipulated that each of the four doctors named in the indictment would testify concerning the dates and the amounts of Dilaudid each had prescribed for appellant on each date. Each of the doctors would also testify that at no time did appellant inform him that appellant was being treated by other doctors and that appellant was obtaining multiple prescriptions for Dilaudid. The State and appellant also agreed that the stipulated testimony was true and correct and that each of the above activities described occurred in Dallas County,

Texas. The court found appellant guilty as charged and pronounced sentence.

*Appeal*

On appeal, appellant raises two issues, which he later characterizes as "points of error," in his brief. The issues are closely related and can be resolved together. Appellant asserts that he was charged with conduct by omission—failing to inform the doctors he consulted that he was receiving a controlled substance, Dilaudid, from other sources. He argues there is no statutory duty placed upon a patient to disclose to his doctor that he is receiving medical treatment or a controlled substance from another source. Because the State did not prove the existence of a statutory duty to disclose such information, according to appellant, the evidence was not sufficient to convict him. In the absence of a statutory duty to act, appellant argues that he could not be convicted of the charged omission. For the same reasons, appellant continues, the indictment failed to allege a statutory duty to act; therefore, the indictment was fundamentally defective for failing to allege an offense. Relying on an outdated version of section 6.01(c) of the penal code and the case of *Billingslea v. State,* 780 S.W.2d 271, 273–74 (Tex.Crim.App.1989), appellant argues that because the conduct with which he is charged is conduct by omission, the State was required to prove a corresponding statutory duty to act. *See* TEX. PEN.CODE ANN. § 6.01 (Vernon 1994).[1] Appellant argues that because the State did not allege a statutory duty, the indictment is fundamentally defective. Appellant also argues that because the State did not prove a statutory duty, the evidence is legally insufficient to support his conviction.

---

1. Appellant incorrectly states that section 6.01(c) provides that conduct by omission is not an offense unless the defendant had a *statutory* duty to act. The current version of section 6.01(c) provides that one who fails to act does not commit an offense unless a law as defined by section 1.07 provides that the omission is an offense or otherwise provides that he has a duty to perform the act. TEX. PEN. CODE § 6.01(c)(Vernon 1994). "Law" as currently defined in section 1.07 is not limited to a statute.

We disagree. Appellant is mistaken that he is charged with a crime committed by omission or a failure to act, and is further mistaken that *Billingslea* applies to the facts of this case. Appellant is charged with a crime of commission, not omission. *Billingslea* is inapplicable because its holding that a statutory duty is required has been overruled by the amendment to section 6.01 and it is factually distinguishable. Because appellant was charged with an offense of commission, *i.e.*, the act of possessing or attempting to possess a controlled substance by presenting the same medical problem and medical records to multiple doctors and receiving multiple prescriptions, without disclosing to each doctor the material information that he was receiving treatment and prescriptions from other doctors at the same time, the State was not obligated to either plead or prove a duty to act.

■ The dissent asserts that the prescriptions by which appellant obtained Dilaudid were "valid prescriptions." Even if that were true, which we do not conclude, it is irrelevant and has no bearing on the offense for which appellant was charged and convicted. The gravamen of the offense with which appellant was charged is possessing and attempting to possess a controlled substance. *See Bush v. State*, 628 S.W.2d 270, 273 (Tex.App.-Amarillo 1982, pet. ref'd). If one obtains possession of a controlled substance by a forged prescription, once the State alleges an attempt was made to obtain possession by misrepresentation or otherwise, an offense is charged and neither the purport nor tenor of the forged prescription used is necessary to allege the offense. *Id.* The Texas Court of Criminal Appeals has held that an indictment for this offense need not set out the elements of passing a forged writing. *Harrell v. State*, 643 S.W.2d 686, 689 (Tex.Crim.App. [Panel Op.] 1982). The tenor of the prescription is of no consequence in alleging the offense of obtaining a controlled substance through fraud. *Robinson v. State*, 686 S.W.2d 323, 325 (Tex.App.-Houston [14 th Dist.] 1985, pet. ref'd). Attempting to possess or possessing a controlled substance is the offense, and making the attempt or the possession is an act of commission, not omission.

Forging a prescription may in itself be an offense, but, as the cases cited above indicate, a prescription need not be forged to commit the offense of attempting to obtain possession of a controlled substance by fraud or deception. Hence, the State need not prove that a prescription was forged to obtain the conviction of a defendant of the offense of attempting to obtain possession.

Appellant was charged with a criminal offense defined by a law not found in the penal code, but, rather, a law found in the Texas Health and Safety Code. Specifically, appellant was charged under that section of the health and safety code that provides: "[A] person commits an offense if the person knowingly possesses or attempts to possess a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge." Tex. Health & Safety Code Ann. § 481.129(a)(4)(A) (Vernon Supp.1999).

■ A person commits a criminal offense only if he voluntarily engages in conduct, including an act, an omission, or possession. Tex. Pen.Code Ann. § 6.01(a) (Vernon 1994). "Conduct" means an act or omission and its accompanying mental state. Tex. Pen.Code Ann. § 1.07(10) (Vernon 1994). Conduct constitutes an offense if it is defined as an offense by statute. Tex. Pen.Code Ann. § 1.03(a) (Vernon 1994). Section 1.03(a) applies to offenses defined by other laws, unless the statute defining the offense provides otherwise. Tex. Pen.Code Ann. § 1.03(b) (Vernon 1994). Section 481.129(a)(4)(A) does not provide otherwise. Consequently, the conduct of possessing or attempting to possess a controlled substance by fraud or deception constitutes an offense because it is defined as an offense by statute. Tex.

Health & Safety Code Ann. § 481.129(a)(4)(A) (Vernon Supp.1999).

A person commits an offense if the person knowingly possesses or attempts to possess a controlled substance "by misrepresentation, fraud, forgery, deception, or subterfuge." Tex. Health & Safety Code Ann. § 481.129(a)(4)(A) (Vernon Supp. 1999). Appellant correctly observes that the Texas Health and Safety Code does not define either "fraud" or "deception." As a result, he contends that the statute under which he was indicted did not impose upon him an affirmative duty to disclose to his treating physicians the fact that he was obtaining Dilaudid from multiple sources.

Appellant's analysis fails because his underlying premise—that he was charged with conduct by omission-is flawed. Appellant was charged with conduct by commission, not omission. He was charged with the act of possessing or attempting to possess a controlled substance by fraudulent means, to-wit, by presenting an incomplete medical history and incomplete records to each doctor. He was not charged with conduct by a failure to act, or by omission; consequently, section 6.01(c) does not apply and the State was not required to either plead or prove a corresponding duty to act.

Unlike the indictment in *Billingslea,* the indictment under which appellant was charged did contain an allegation that a punishable "act" occurred. *Cf. Billingslea,* 780 S.W.2d at 271 n. 2 ( the indictment did not contain an allegation that a punishable "act" occurred). Billingslea was charged with "failing to obtain medical care." *Billingslea,* 780 S.W.2d at 275. Billingslea was charged with a crime of neglect committed by omission; thus, the State was required to plead and prove a duty to act. Because appellant was indicted and convicted of conduct by commission, to-wit, by the act of possessing and attempting to possess a controlled substance by a fraudulent or deceptive means, the State had no obligation to plead or prove a duty to act.

*See Billingslea,* 780 S.W.2d at 275 (criminal responsibility for acts does not require an underlying duty of any kind). *Billingslea* is, therefore, factually distinguishable and does not apply to the facts in this case.

■ The statute under which appellant was charged does not specially define the terms "fraud" and "deception." When words are not specially defined by the Legislature, they are to be understood as ordinary usage allows, and a fact finder may thus freely read statutory language to have any meaning which is acceptable in common parlance. *See Vernon v. State,* 841 S.W.2d 407, 409 (Tex.Crim.App.1992) (applying principle to jurors). It is our duty when interpreting a statute to give the ordinary and plain meaning to the language of the Legislature. *State v. Mancuso,* 919 S.W.2d 86, 87 (Tex.Crim. App.1996). Thus, when we determine the sufficiency of the evidence to support a jury verdict, we must not employ definitions of relevant statutory words which are different or more restrictive than the jurors themselves were legally entitled to use. *Vernon,* 841 S.W.2d at 409. We conclude the same is true when the trial judge is the trier of fact, as here. We now look to how the words "fraud" and "deceit" are understood in ordinary usage.

Webster's Dictionary defines "fraud" in its primary definition of the word as, among other things, "an intentional misrepresentation, concealment, or *nondisclosure* for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right." Webster's Third New International Dictionary 904 (1981) (emphasis added). Still within the primary definition, Webster's defines "fraud" as "a false representation of a matter of fact by words or conduct, by false or misleading allegations, or *by the concealment of what should have been disclosed* that deceives or is intended to deceive another so he shall act upon it to his legal injury." *Id.* (emphasis added). Webster's defines "deceit," as part of the primary definition, as "the act or practice

of deceiving (as by falsification, *concealment*, or cheating)." *Id.* at 584 (emphasis added). The Oxford English Dictionary defines "deceit," as its primary definition, as "[t]he action or practice of deceiving; *concealment of the truth in order to mislead;* deception, fraud, cheating, false dealing." 4 OXFORD ENGLISH DICTIONARY 324 (2d ed.1989) (emphasis added).

 Thus, nondisclosure of a material fact, in order to obtain what one would otherwise not be able to obtain, can constitute fraud. Appellant argues that the "gravamen" of his conduct was that "he went to several doctors, obtained several prescriptions for a controlled substance, but *did not* inform each doctor he was getting the drug from another doctor. In essence, the evidence showed an omission to disclose." Appellant is wrong. As we stated earlier, the gravamen of the offense is the attempting to possess or possessing a controlled substance. *Bush*, 628 S.W.2d at 273. The failure to disclose a material fact with the intent to deceive is the heart of the fraud and deception elements of the offense for which appellant was indicted and convicted.

 Appellant suggests that he simply failed to disclose his medical history and current treatment to each of the four doctors he visited, and he contends that his failure to do so is not a criminal offense. We disagree. Appellant was charged with, and convicted of, the punishable act of possessing or attempting to possess a controlled substance by "misrepresentation, fraud, forgery, deception, and subterfuge." If the nondisclosed information were immaterial then perhaps it would be insufficient to constitute the "fraud" or "deception" element. If, for example, appellant failed to disclose that he had taken some aspirin two months before, a trier of fact might reasonably conclude that such fact was immaterial; thus, there was no fraud or deception and no offense was committed. However, each doctor individually prescribed Dilaudid in amounts averaging only three tablets a day, but never more

than six tablets a day. Because of the multiple prescriptions, however, appellant obtained an average of sixteen tablets a day over a five-month period, with more frequent prescriptions toward the end of that period. The trier of fact could rationally have concluded that appellant's own conduct shows the materiality of the nondisclosed fact of the multiple prescriptions, as well as his intent to deceive. Appellant's failure to disclose to each of the physicians that he was obtaining Dilaudid from other sources permitted a rational trier of fact to reasonably conclude that the nondisclosure was material because it was intended to induce the physicians into prescribing medication that they would not have otherwise prescribed.

 Appellant's charged conduct is the punishable act of possessing or attempting to possess a controlled substance by fraud and deceit. Appellant's conduct in possessing the controlled substance involves a punishable "act," not a simple omission. Criminal responsibility for acts does not require an underlying duty of any kind. *Billingslea*, 780 S.W.2d at 275. The method or means by which appellant obtained the controlled substance was by the reporting of incomplete medical history and records to a physician, while concealing the truth about certain material information, with the intent to deceive or mislead the physician into prescribing a controlled substance. The possessing or attempting to possess a controlled substance by the concealment of material information, in an effort to deceive or defraud the physicians, is the offense proscribed by section 481.129(a)(4)(A).

 Moreover, in the alternative, even if the State were required to prove that appellant had a duty to disclose material information, we conclude that section 481.129(a)(4)(A) of the Texas Health and Safety Code imposes an affirmative legal duty on one obtaining a controlled substance from a physician to do so *without* engaging in "misrepresentation, fraud, for-

gery, deception, or subterfuge." TEX. HEALTH & SAFETY CODE ANN. § 481.129(a)(4)(A) (Vernon Supp.1999). Thus, appellant had a legal duty to inform the physician of material facts. If we substitute their definitions for the terms "fraud" and "deception," the statute means that a person commits an offense if he knowingly possesses or attempts to possess a controlled substance: (1) by an intentional concealment or nondisclosure of a material fact for the purpose of inducing the controlled substance provider to part with the controlled substance; or (2) by concealing a material fact in order to mislead a physician into giving a prescription that the physician would not have given had the information been disclosed.

 The dissent argues that "the law is clear that it is the physician's duty to obtain a patient history in order to adequately diagnose and treat a patient." The authorities the dissent cites, however, are all medical malpractice cases. We do not dispute that a plaintiff in a medical malpractice case must prove that a physician has a duty to act according to a certain standard of care. *See Bradford v. Alexander,* 886 S.W.2d 394, 396 (Tex.App.-Houston [1 st Dist.] 1994, no writ). Nor do we dispute that, as part of that duty, a physician may have the obligation to inquire into a patient's medical history.

 This case, however, does not involve medical malpractice; it involves the commission of a criminal offense. The duty of a physician to maintain a certain standard of care and the duty of a person to abstain from criminal conduct are separate and distinct duties. Intent may be proved by circumstantial evidence, such as the quantity of drugs possessed. *Gabriel v. State,* 842 S.W.2d 328, 331 (Tex.App.-Dallas 1992), *aff'd,* 900 S.W.2d 721 (Tex. Crim.App.1995). In the same way, appellant's intent to obtain a controlled substance may be proved by circumstantial evidence. Appellant went to four separate doctors to obtain Dilaudid. It would have been more convenient and less time-con-

suming to go only to one doctor, had appellant believed that one doctor would have prescribed him the amount of Dilaudid that he wanted. That appellant concealed from each doctor the fact that he was obtaining Dilaudid from three other doctors is a fact material to his commission of a criminal offense.

Appellant relies on an outdated version of section 6.01(c) and *Billingslea* for the proposition that an omission is not an offense unless a defendant has a *statutory* duty to act. *See* TEX. PEN.CODE ANN. § 6.01(c) (Vernon 1994); *Billingslea,* 780 S.W.2d at 276. We note, however, that, at the time the Texas Court of Criminal Appeals issued its opinion in *Billingslea,* section 6.01(c) of the Texas Penal Code read that "a person who omits to perform an act does not commit an offense unless a statute provides that the omission is an offense or otherwise provides that he has a duty to perform an act." *Billingslea,* 780 S.W.2d at 274. In 1993, the Legislature amended section 6.01(c) by deleting the word "statute" and inserting in its place the phrase "law as defined by section 1.07 of this code," as section 6.01(c) now reads. Act of Feb. 18, 1993, 73d Leg., R.S., ch. 3, § 1, 1993 Tex. Gen. Laws 10, 10. Section 1.07, in turn, gives a very broad definition of law:

> the constitution or a statute of this state or of the United States, a written opinion of a court of record, a municipal ordinance, an order of a county commissioners court, or a rule authorized by and lawfully adopted under a statute.

TEX. PEN.CODE ANN. § 1.07(a)(30) (Vernon 1994). By this amendment, that portion of *Billingslea's* holding that requires a statutory duty has been overruled.

Appellant's first point of error asserts that the evidence was insufficient to sustain appellant's conviction because the State proved no statutory duty to act that would criminalize appellant's conduct. Appellant's second point of error asserts that appellant's indictment was fundamentally

defective because it failed to allege a statutory duty to act, and hence it failed to allege an offense.

For all the reasons set out above, we hold that section 481.129(a)(4)(A) of the Texas Health and Safety Code proscribes conduct by commission, not omission. Because the stipulated evidence proved punishable acts committed by appellant, we conclude the evidence was sufficient to sustain his conviction. We further hold that the indictment under which appellant was charged alleged a punishable act; thus, its failure to allege a legal duty to act does not render it fundamentally defective for failure to state an offense. Because appellant was charged with committing a punishable act, section 6.01(c) does not operate to impose on the State an obligation to either plead or prove a duty to act.

We overrule both points of error and affirm the trial court's judgment.

Dissenting Opinion By Justice
WRIGHT.

Because I disagree with the majority that appellant was charged with a crime committed by commission, and because I cannot conclude there is an affirmative legal duty on the part of a patient to independently determine what information is material and then disclose it to his doctor without being asked, I dissent.

I begin my analysis with a determination of whether the State charged appellant with a crime of omission or a crime of commission. The penal code provides that a person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession. TEX. PEN.CODE ANN. § 6.01 (Vernon 1994). "Conduct" means an act or omission and its accompanying mental state. TEX. PEN.

CODE ANN. § 1.07(a)(10) (Vernon 1994). "Act" means a bodily movement, whether voluntary or involuntary, and includes speech. TEX. PEN.CODE ANN. § 1.07(a)(1) (Vernon 1994). An omission is the failure to act. TEX. PEN.CODE ANN. § 1.07(a)(34) (Vernon 1994).

The indictment in this case charged appellant with possessing a controlled substance by fraud or deception. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.129(a)(4)(A) (Vernon Supp.1999). The State's theory of the offense, as alleged in the indictment, was that appellant fraudulently obtained multiple prescriptions for a controlled substance by "present[ing] the same medical problem, to wit: 'Trigeminal Neuralgia,' and medical records to four doctors ... without informing each doctor of current and past treatment by the other doctors and did obtain multiple prescriptions for DILAUDID ... which are outside the scope of accepted medical practice and treatment." The State presented evidence, through the stipulated facts, that appellant went to four different doctors, obtained multiple prescriptions for Dilaudid, and at no time informed the doctors that he was being treated by other doctors who had also prescribed Dilaudid.[1] Thus, the State predicated appellant's guilt on his failure to inform the other doctors of his current and past medical treatment. In other words, according to the State, appellant's possession of the Dilaudid, for which he had valid prescriptions,[2] was only illegal because appellant obtained it by *failing* to perform an act. Because appellant's possession of the prescribed Dilaudid was not in and of itself sufficient to support illegal possession, and his possession of the Dilaudid can only be characterized as illegal

---

1. The stipulated facts do not contain any evidence that the multiple prescriptions were outside the scope of accepted medical practice or treatment.

2. Under section 481.062 of the health and safety code, a person may lawfully possess a controlled substance by order of a practitioner. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.062 (Vernon Supp.1999). Here, the doctors admittedly prescribed the Dilaudid for appellant because of his trigeminal neuralgia. Neither the indictment, the evidence, nor this dissent suggests that the State must prove that the prescription was forged.

because he failed to perform an act, I disagree with the majority's conclusion that the *conduct* alleged by the State to be criminal was "the act of possessing or attempting to possess a controlled substance." I would conclude that the *offense* alleged by the State was the offense of possessing or attempting to possess a controlled substance by fraud or deception. The offense, as alleged, had to be committed by engaging in certain *conduct.* According to the State, *the illegal conduct was appellant's failure to inform the other doctors of his current and past medical treatment.* Again, an omission is the failure to act. TEX. PEN.CODE ANN. § 1.07(a)(34) (Vernon 1994). Thus, I cannot agree with the majority's conclusion that appellant was charged with a crime of commission rather than a crime of omission.

Because the State indicted appellant for failing to act, a crime of omission, the State must prove a corresponding legal duty to perform the act. *See* TEX. PEN. CODE ANN. § 6.01 (Vernon 1994). Prior to 1993, in order to criminalize a failure to act, it was necessary for the State to prove that a statutory duty to act existed. *See Billingslea v. State,* 780 S.W.2d 271, 273–74 (Tex.Crim.App.1989). In 1993, the Legislature amended section 6.01(c). *See* Act of Feb. 18, 1993, 73d Leg., R.S., ch. 3 § 1, 1993 Tex. Gen. Laws 10, 10. The amendment changed the law to allow common law duties to form the basis of criminal sanctions from the former law requiring an explicit statutory duty to act. *See* TEX. PEN.CODE ANN. § 6.01© (Vernon 1994).[3] Thus, the 1993 amendment expanded the sources in which to find the necessary legal duty, encompassing common law duties as well as statutory duties. It did not, however, abrogate the necessity for the State to prove, as an essential element of the offense, the corresponding

legal duty to act. Nor did the amendment overrule the portion of *Billingslea* analyzing whether the statute contained both the duty to act and the omission within its parameters. Thus, because the majority concludes that the necessary legal duty in this case is created by section 481.129 itself, and not by any other statute or law, I cannot agree with the majority that appellant's reliance on *Billingslea* is misplaced.

In *Billingslea,* the defendant's 94 year old bedridden mother lived with him. She was hospitalized for and later died from neglect. The defendant was charged with injury to an elderly person. *See* TEX. PEN. CODE ANN. § 22.04 (Vernon 1994 & Supp. 1999). The indictment alleged that the defendant caused his mother serious bodily injury by failing to obtain medical care for his mother when she was physically unable to secure medical care for herself. *Billingslea,* 780 S.W.2d at 274. At the time of the offense, section 22.04 provided that a person committed an offense if he intentionally, knowingly, or recklessly or with criminal negligence, by act or omission, engaged in conduct that caused serious bodily injury to an individual 65 years of age or older. *See id.* at 273. The court of criminal appeals held that although section 22.04 provided that the omission was an offense, it did not provide for a statutory duty to care for an elderly person. Nor was the defendant under any other statutory duty to care for his mother. Thus, the court of criminal appeals concluded that the indictment was fundamentally defective for failing to include a statutory duty imposing a punishable omission. *Id.* at 274.

A statute may provide for both the duty to act and the omission within the parameters of the specific penal provision. *Id.* For example, section 25.05 of the penal code provides that an individual commits an of-

---

**3.** The Legislature amended section 6.01© to replace the word "statute" with "law as defined by Section 1.07." Section 1.07 defines "law" as "the constitution or a statute of this state or of the United States, a written opin-

ion of a court of record, a municipal ordinance, an order of a county commissioners court, or a rule authorized by and lawfully adopted under a statute." TEX. PEN.CODE ANN § 1.07(a)(30) (Vernon 1994).

fense if he intentionally or knowingly fails to provide support for his child younger than 18 years of age, or for his child who is the subject of a court order requiring the individual to support the child. *See* TEX. PEN.CODE ANN. § 25.05 (Vernon 1994); *Billingslea*, 780 S.W.2d at 274. Another such example is found in a different subsection of the statute at issue in this case. In section 481.129(a)(5), the Legislature provided that a person commits fraud if the person knowingly and intentionally "furnishes false or fraudulent material information in or omits material information from an application, report, record, or other document required to be kept or filed under this chapter." TEX. HEALTH & SAFETY CODE ANN. § 481.129(a)(5) (Vernon Supp. 1999). In both examples, the omission is predicated upon a clear duty to act, both of which are found in the same statute. *See Billingslea*, 780 S.W.2d at 274. In contrast, section 481.129(a)(4) provides that a person commits an offense if the person knowingly or intentionally "possesses or attempts to possess a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge." *See* TEX. HEALTH & SAFETY CODE ANN. § 481.129(a)(4)(A) (Vernon Supp.1999). Admittedly, the plain and ordinary meaning of the words fraud and deception includes a failure to disclose material information, and, thus, I agree with the majority that section 481.129(a)(4)(A) proscribes a failure to disclose material information. I cannot conclude, however, that the use of the words fraud and deception in any way identify a duty on the part of the patient to determine what is material information and then disclose it to his physician. I would conclude that, like the statute at issue in *Billingslea*, section 481.129(a)(4)(A) in no way adequately informs those subject to prosecution that they must perform a specific duty to avoid punishment. *See* Billingslea, 780 S.W.2d at 275–76.

That, however, does not end the inquiry because section 6.01(c) allows the duty to be derived not only from statutes, but also from the common law. *See* TEX. PEN.CODE ANN. § 6.01(c) (Vernon 1994). Neither the State nor the majority cites, and my research has not disclosed, a case imposing a common law duty on the part of the patient to determine what facts are material and then to disclose them to the physician. To the contrary, the law is clear that it is the physician's duty to obtain a patient history in order to adequately diagnose and treat a patient. *See, e.g., Harvey v. Stanley*, 803 S.W.2d 721, 724 (Tex.App.-Fort Worth 1990, writ denied) (doctor was negligent in taking patient history); *Granado v. Madsen*, 729 S.W.2d 866, 874 (Tex. App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.) (evidence supported jury's negative finding on doctor's failure to obtain adequate medical history and evaluation where evidence showed doctor met with patient prior to surgery and specifically inquired as to allergies, medical illnesses, present medication, and previous history of liver disease). The law also imposes a duty on the physician to adequately inform a patient about the risks or hazards of taking a particular drug. *See, e.g., Barclay v. Campbell*, 704 S.W.2d 8, 9 (Tex. 1986) (doctor failed to inform patient of potential side effects of medication).[4]

Here, there is no evidence that any of the doctors asked for or received a medical history from appellant. The stipulation of evidence only provides that each of the doctors would testify that appellant never told them that he was being treated by other doctors. To place the duty on the patient, rather than the physician, to determine what information is material would ignore the nature of the doctor/patient relationship and the superior training and education of the doctor. Thus, I cannot conclude this to be the law.

---

**4.** I recognize that this is a criminal, not a medical malpractice, case. However, because the Legislature has authorized criminal convictions for failing to perform a legal duty—either statutory or common-law duties, to be complete, my analysis must include a discussion of the common law duties of patients and physicians.

In conclusion, I agree with the majority that appellant failed to disclose information to his treating physicians. Further, I agree with the majority that section 481.129(a)(4)(A) proscribes appellant's conduct. However, because I would conclude that the State charged appellant with a crime of omission, rather than a crime of commission, and the State failed to prove either a statutory or a common law duty to "[inform] each doctor of current and past treatment by other doctors," I would conclude that the evidence is legally insufficient to support appellant's conviction under this indictment. The record does support and it goes unchallenged that appellant suffers from a medical problem known as trigeminal neuralgia for which four different doctors prescribed the same medication. However, I wish to emphasize that the record does not contain evidence that any of the doctors asked for information about appellant's prior and current medical treatment. If the stipulation indicated that they had done so, I would undoubtedly come to a different conclusion. Once a doctor inquires about a patient's medical history, the patient is under an obligation to fully disclose the information requested by the doctor. In that situation, the determination about what information is material remains with the doctor. My disagreement with the majority opinion is that it judicially creates a new duty in the law for a patient to determine what information is material and then to disclose it to a physician. I am of the opinion that this is best left to the Legislature. Because there is no evidence that any of the doctors asked appellant for information which he then failed to disclose, I would conclude that the State failed to show the necessary duty on the part of appellant to act. I would reverse the trial court's judgment and render a judgment of acquittal.