

# IN THE
# TENTH COURT OF APPEALS

No. 10-13-00312-CR

MELISSA ADLER,

Appellant

v.

THE STATE OF TEXAS,

Appellee

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2012-1184-C2**

## MEMORANDUM OPINION

Melissa Adler appeals from two convictions for the offense of securing the execution of a document by deception. TEX. PEN. CODE ANN. 32.46 (West 2011). Adler complains that the evidence was insufficient to prove that she had an intent to defraud any person, that the indictments were invalid because the Office of the Attorney General lacked the authority to present them to the grand jury, that the attorney general's Medicaid Fraud Control Unit did not have authority to prosecute the case, that the trial court abused its discretion by denying her motion for mistrial, and that the trial

court abused its discretion in the admission of evidence that was not properly authenticated. Because we find no reversible error, we affirm.

*Sufficiency of the Evidence*

Adler complains in her first issue that the evidence was insufficient to prove that she acted with the intent to defraud. Adler's second issue complains that the evidence was insufficient to prove that she acted with the intent to defraud any person.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the

prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. at 326. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

### *Securing the Execution of a Document by Deception*

A person commits the offense of securing the execution of a document by deception when "with intent to defraud or harm any person, he, by deception . . . causes another to sign or execute any document affecting property or service or the pecuniary interest of any person[.]" TEX. PEN. CODE ANN. § 32.46(a)(1). Adler was charged with committing the offense only with the intent to defraud any person.

### *Facts Relating to the Offense*

Eugene Handley was a resident at a facility called Woodland Springs where Adler was employed. In 2000, Handley executed two wills, both of which named Woodland Springs as his sole beneficiary. While Handley was residing at Woodland Springs, he and Adler developed a friendly relationship that continued after Handley was moved to a Veteran's Administration facility in another city. In January of 2003,

medical notes from the VA indicate that Adler was told that Handley was not competent to make decisions.

In late 2002, Handley had met with an attorney, who had been his appointed fiduciary for several years, to prepare a new will. The attorney believed that Handley was competent at that time in 2002. The will was not prepared until early 2003, however. The will was not executed in the attorney's office, but was picked up by Adler and returned to the attorney's office some time later.[1]

In February 2003, it was noted that Handley was considered incompetent for VA purposes, having been diagnosed with paranoid schizophrenia, advanced Parkinson's disease, dementia related to Parkinson's, and pressure sores. Around the same time, Adler investigated having Handley execute a power of attorney but the staff at the VA informed her that Handley was not competent to execute any legal documents.

On April 16, 2003, Adler was accompanied by a notary to the VA hospital to get Handley's signature on some documents notarized. The notary was not told that it was a will but that it was some papers to help Handley get some benefits. In the presence of the notary, Adler did not tell Handley that it was a will he was signing, but told him the same thing about helping him get some benefits. There were no "witnesses," as that term is used in relation to the execution of wills, that were present at the time Handley signed the will.

---

[1] The attorney was also indicted on related charges, but was not tried with Adler.

Subsequent to Handley signing the will, Adler approached a long-time friend of hers in the friend's yard and asked her to sign a document, which was in fact Handley's will. Adler also asked the friend to sign the friend's husband's name to the document. Adler did not tell her friend that she was signing a will that named Adler as a beneficiary, and the friend did not notice that the document was a will. Adler's friend testified that she would not have signed the document if she had known it was a will, although she agreed that Adler did not prevent her from looking at the document.

Handley passed away on July 16, 2005. Shortly thereafter, Adler retained an attorney to probate Handley's 2003 will. The probate was filed in August of 2005 and an order probating the will and appointing Adler as the independent executor of Handley's estate was signed by the McLennan County Judge on September 7, 2005. Adler then wrote herself checks for the monies in Handley's accounts, which totaled over $165,000.

Adler was indicted in June of 2011 for several charges including securing the execution of a document by deception as to the county judge. Adler was re-indicted in July of 2012 for four counts of securing the execution of a document by deception as to the county judge, Adler's probate attorney for Handley's estate, the notary who notarized the 2003 will, and the friend who signed the 2003 will as a witness, who were the persons who executed the various documents at the request of Adler. Adler was also indicted for one count of misapplication of fiduciary property.

Adler was tried only for the offenses of securing the execution of a document by deception as alleged as to the county judge, the probate attorney, and the friend. The State alleged in each count that the offenses occurred as one scheme and continuing course of conduct. At trial, Adler was convicted of the offenses as to the county judge and probate attorney but was acquitted of the offense as to the friend who signed as a witness.

## Intent to Defraud Any Person

In her first issue, Adler argues that the evidence was insufficient to prove that she acted with the intent to defraud when she instituted the probate proceedings or appeared before the county judge to probate the will. In her second issue, Adler complains that the evidence was insufficient to prove that she acted with the intent to defraud any person. Because these issues are very closely intertwined and Adler argues them jointly to some extent in her briefing, we will consider, analyze, and discuss the two issues together.

### Effect of the Acquittal

Initially, Adler contends that the acquittal of the offense as to Adler's friend, who signed the will as a witness, establishes that the jury found that Handley was competent when he signed the will and that Handley's will was otherwise valid. Adler argues that she was therefore legally entitled to inherit Handley's estate and could not have had the

intent to defraud when she instituted probate proceedings or appeared before the county judge to probate the will because she could not intend to defraud herself.

We disagree that the jury's determination that Adler was not guilty of the offense as to the friend's signing of the will necessarily means that the jury determined the 2003 will was executed properly. The seven-year statute of limitations regarding the offense of which Adler was acquitted was strongly contested by Adler both before and during the trial. The jury was instructed to determine when all of the elements of the offenses were complete, which as it related to Adler's friend arguably was on April 16, 2003, which was the date the friend signed the 2003 will as a witness. This would mean that the statute of limitations expired in 2010, which would necessitate a finding of not guilty as to that offense even if the jury believed that each of the other elements of the offense were proved beyond a reasonable doubt. It is also possible that the jury believed that the State did not prove beyond a reasonable doubt that Adler deceived or intended to defraud her friend into signing the will as a witness; however, this does not mean that the will was executed properly. The only evidence before the jury regarding the formalities of the execution of the will was that the will was not properly executed. We do not agree that Adler's acquittal of the count as to will signing by her friend necessarily requires a finding that the evidence was then insufficient to establish that there was no impropriety in the execution of Handley's will and that Adler was the lawful beneficiary of Handley's estate.

*Intent to Defraud Any Person*

We now turn to the elements of the offense. Under Texas law, a person commits the offense of securing execution of a document by deception if, with intent to defraud or harm any person, [s]he, by deception, causes another to sign or execute any document affecting the pecuniary interest of any person. TEX. PENAL CODE ANN. § 32.46(a)(1) (West 2011). Intent to defraud can be inferred from acts, words, and conduct of the accused. *See Goldstein v. State*, 803 S.W.2d 777, 791 (Tex. App.—Dallas 1991, pet. ref'd).

The penal code does not define "defraud." In such a case, we give that word its "plain meaning unless the statute clearly shows that [it was] used in some other sense." *In re E.P.*, 185 S.W.3d 908, 910 (Tex. App.—Austin 2006, no pet.) (citing *Coggin v. State*, 123 S.W.3d 82, 88 (Tex. App—Austin 2003, pet. ref'd). We then look to the dictionary or other similar sources to determine the word's definition. *See Oler v. State*, 998 S.W.2d 363, 368 (Tex. App.—Dallas 1999, pet. ref'd, untimely filed) (noting that fraud and deception are not statutorily defined and referring to dictionary definition for ordinary usage of terms). A person defrauds another if they "trick or cheat someone or something in order to get money or use fraud in order to get money from a person, an organization, etc." MERRIAM-WEBSTER.COM, Merriam-Webster, n.d. Web (10 Oct. 2014), *available at* http://www.merriam-webster.com/dictionary/defraud); *see also Margraves v. State*, 34 S.W.3d 912, 923 (Tex. Crim. App. 2000) (Johnson, J., concurring) (because penal

code does not define "defraud," courts are to use common meaning; "an entry in a thesaurus gives the synonyms of dupe, swindle, cheat, or deceive," and defraud "appears to be a specific way of causing 'harm'").

Adler also argues that no person was in fact defrauded by the improprieties in the execution and probate of the 2003 will. However, the applicable portion of section 32.46 under which Adler was indicted does not require that any person is actually in fact defrauded; rather the statute is intended to punish the deceptive conduct surrounding the execution of documents, and the conduct must be undertaken with the intent to defraud any person, which can be, but is not necessarily, a person other than the one being deceived. *See Mills v. State*, 722 S.W.2d 411, 415 (Tex. Crim. App. 1986) (stating that under section 32.46, "the 'forbidden conduct' is deception" and the deceptive conduct "must be perpetrated with the specific 'intent to defraud or harm any person'" as contrasted with the theft statute in section 31.03, in which "the gravaman of the offense remains the penalization of unlawful acquisitive conduct," and that "deception is not of itself 'forbidden conduct'"). In this instance, the deceptive conduct was to have the attorney sign and file the necessary documents to admit the will to probate as a properly executed will and her appearance before the judge to prove up the validity of the will and its execution and thereby induce the judge to sign an order to admit the will to probate. In doing those things, the jury could reasonably infer that Adler must have intended to defraud a person by her deception.

Neither the indictment nor the jury charge define or limit the identity of "any person." Therefore, the jury was free to determine whether the evidence established that Adler intended to defraud any person. The State argued that it was the judge, the attorney, and the friend who witnessed the will who could be "any person" but there was also evidence presented that in the event that the 2003 will was declared invalid, the previous will would then determine the beneficiary of Handley's estate. The beneficiary under the 2000 will was Woodland Springs. Viewing the evidence in a light most favorable to the judgment, we find that the evidence was sufficient for any reasonable juror to have found that Adler intended to defraud any person, that being Woodland Springs,[2] by pursuing the probate of the 2003 will, which she knew was improperly executed. We overrule issues one and two.

*Void Indictments*

In her third issue, Adler complains that the indictments against her are a nullity because the attorney general's office did not have authority to present the cases to the grand jury as prosecutors. The attorney general's office represented the State during the entirety of the proceedings from the time of the initial indictments in 2011 through trial in 2013. Adler was initially investigated by the attorney general's office for the circumstances surrounding the execution of the will. The elected district attorney requested the attorney general's office to proceed with the prosecution of Adler, which

---

[2] "Person" was defined in the jury charge as "an individual, corporation, or association."

included appearing before the grand jury in 2011 and 2012 to secure the indictments against Adler. Then, in July of 2013, the elected district attorney filed a motion to recuse his office and sought to have the attorney general's office appointed as attorneys *pro tem*.

Just prior to trial, Adler filed a pretrial application for a writ of habeas corpus on the basis that the attorneys from the attorney general's office did not have the authority to prosecute the case against her. For this reason, Adler was seeking a dismissal of the indictment. The trial court conducted a hearing on the issue and heard testimony from the elected district attorney regarding the process of the appointment and the authority of the attorneys from the attorney general's office. The district attorney testified that because the attorney general's office had investigated the case and because he knew the attorney who had been Handley's fiduciary who had drafted the 2003 will who had also been indicted on similar charges, he wanted the attorneys in the attorney general's office to prosecute both cases against Adler and the attorney who had been Handley's fiduciary. The attorneys from the Attorney General's office were sworn in and continued working under the umbrella of the district attorney's office, but were independent as it related to decision making. In April of 2012, two of the attorneys executed and filed oaths of office as "Criminal District Attorney[s] Pro Tem." Less than a month prior to the trial, in July of 2013, the elected district attorney filed a motion to recuse his office in an attempt to clear up any confusion surrounding the authority of

the attorney general's office to prosecute the case because "the special assistant stuff wasn't good enough."

Throughout the proceedings, prior to the recusal, the attorneys referred to themselves and were referred to with various titles, such as "Special Assistant District Attorney of McLennan County," "assistant attorney general … sitting with the consent of the local District Attorney," "Criminal District Attorney Pro Tem," "Special Assistant Criminal District Attorney," "State of Texas, by and through Abelino "Abel" Reyna, her Criminal District Attorney," "Assistant Criminal District Attorney," and "assistant attorney general … with permission of Abelino Reyna the District Attorney." At times, the attorney general's office used the address of the elected District Attorney in its signature block, although they mostly used their office addresses. A McLennan County assistant district attorney signed at least one document during the proceedings for one of the attorneys in the attorney general's office prior to the recusal motion filed by the district attorney.

After the pretrial hearing, the trial court denied Adler's application. Adler argues that throughout the proceedings, the attorneys were attorneys *pro tem* that were not authorized to appear on behalf of the State prior to the recusal of the district attorney.

A district attorney "pro tem" is "*appointed by the district court*, and after taking the oath of office assumes the duties of the elected district attorney and in effect replaces

the latter in performing germane functions of office for purposes contemplated by the appointment." *State v. Rosenbaum*, 852 S.W.2d 525, 529 (Tex. Crim. App. 1993) (Clinton, J., concurring) (emphasis in original). In contrast, a "special prosecutor" is "*permitted by the elected district attorney* to participate in a particular case to the extent allowed by the prosecuting attorney, without being required to take the constitutional oath of office." *Id*. (emphasis in original). The utilization of a special prosecutor is not predicated upon the absence or disqualification of the elected district attorney. *See Davis v. State*, 840 S.W.2d 480, 487 (Tex. App.—Tyler 1992, pet. ref'd).

The terms "special prosecutor" and "attorney *pro tem*" are often used in an improper manner. This confusion of terms has been reflected in appellate opinions. *See, e.g., Rosenbaum*, 852 S.W.2d at 526 n.1; *Stephens v. State*, 978 S.W.2d 728, 731 (Tex. App.—Austin 1998).

Adler's issue is ultimately whether or not the trial court erred by denying her pretrial application for a writ of habeas corpus. When reviewing a trial court's ruling on a habeas claim, we must review the record evidence in the light most favorable to the trial court's ruling and must uphold that ruling absent an abuse of discretion. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003); *see also Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). In this proceeding, we find that the trial court's denial of the application did not constitute an abuse of discretion.

While the State was very imprecise and inconsistent with their terminology, the evidence in favor of the denial shows that the attorneys from the attorney general's office were appearing at the request of and with the consent of the elected district attorney. The attorneys were not appointed by the trial court. This would support a finding that they were functioning as special prosecutors up until the time the trial court recused the district attorney's office and appointed the attorneys from the attorney general's office as attorneys *pro tem*. Because the attorneys were acting as special prosecutors at the time of the indictments, there was no error in their presentation of the case to the grand jury and the indictments were not void. We overrule issue three.

*Authority to Prosecute*

In her fourth issue, Adler complains that the Medicaid Fraud Control Unit of the attorney general's office lacks the statutory authority to prosecute the charges against her. The attorneys that represented the State in these proceedings were part of the Medicaid Fraud Control Unit of the attorney general's office. This unit was created to investigate Medicaid fraud and physical abuse of individuals in institutional settings. 1 TEX. ADMIN. CODE ANN. § 357.587(31). Adler argues that the attorneys within that unit are restricted to prosecution of those types of cases. We have found no authority to support this position. A prosecuting attorney may appoint any assistant attorney general as an assisting prosecuting attorney to assist in the prosecution of criminal

cases.  TEX. GOV'T CODE ANN. §§ 41.102(b), 402.028.  Likewise, as discussed more fully above, the trial court may appoint any licensed attorney as an attorney pro tem in place of an elected district attorney who has been recused.  We overrule issue four.

### *Motion for Mistrial*

In her fifth issue, Adler complains that the trial court abused its discretion by denying her motion for mistrial because the State informed the venire that she had filed an application for community supervision, which the panel believed constituted an admission of guilt by Adler.  A short time after the State's comment, several members of the panel questioned the State as to whether this constituted an admission of guilt by Adler.  The trial court instructed the panel that Adler was required to file an application for community supervision prior to trial because she could not request it after the trial started.  Adler did not object to the State's comment at any time during voir dire prior to the selection of the jury, but made a motion for a mistrial the following morning prior to the jury being sworn.

The State argues that Adler waived this complaint by failing to object at the time of the improper statement or during the panel members' comments.  It is well settled that the failure to object to statements made during voir dire forfeits the right to complain about those statements on appeal.  TEX. R. APP. P. 33.1(a)(1); *Draughon v. State*, 831 S.W.2d 331, 336-37 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 926 (1993).  Therefore, unless an exception applies, Adler has waived her right to complain of any

error occurring during voir dire as to the allegedly improper comment by the State regarding Adler's application for community supervision.

Adler argues that the error violated the presumption of innocence and that the prejudice of the comment was so great that an objection was not necessary. Adler cites to the plurality opinion of the Court of Criminal Appeals in *Blue v. State* in support of her position that an objection was not necessary. *Blue v. State*, 41 S.W.3d 129, 130 (Tex. Crim. App. 2000) (plurality opinion). We find that even though the Court of Criminal Appeals has recently stated that it has no precedential value, the decision in *Blue* is distinguishable from these circumstances. *See Unkart v. State*, 400 S.W.3d 94, 101 (Tex. Crim. App. 2013) ("[T]he *Blue* decision has no precedential value."). Comments by the trial court that were held to violate the presumption of innocence were at issue in *Blue*. Here, Adler complains of the State's comments during voir dire, not the trial court's instruction to the jury regarding the application for community supervision. Adler has presented no authority for the position that the State's mention of the filing of an application for community supervision is of such a nature that no objection is required. We find that a timely objection was necessary to preserve this complaint. TEX. R. APP. P. 33.1(a)(1). We overrule issue five.

### Admission of Evidence

In her sixth issue, Adler complains that the trial court abused its discretion in the admission of a document regarding an allegedly fraudulent insurance claim by Adler

that was offered during the punishment phase of the trial because it was not properly authenticated. The State's first witness during the punishment phase of the trial was an insurance adjuster who testified about a claim made by Adler for the contents of a residence destroyed by fire. The witness presented a document purportedly emailed to him by Adler which contained a list of items destroyed in the fire. Adler objected to the document as not being properly authenticated and the trial court overruled the objection. The adjuster then testified to the contents of the document, and subsequent witnesses testified that many of the things on the list were ultimately found in other locations in Adler's control and had not been destroyed.

In the absence of a running objection, a defendant is required to object each time allegedly inadmissible evidence is offered. *Clay v. State*, 361 S.W.3d 762, 766 (Tex. App.—Fort Worth 2012, no pet.) (*citing Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)); *Long v. State*, 10 S.W.3d 389, 399 (Tex. App.—Texarkana 2000, pet. ref'd). Even if a trial court's admission of evidence is erroneous, it "will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *see Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004); *Valle v. State*, 109 S.W.3d 500, 508-09 (Tex. Crim. App. 2003). As a result, the subsequent admission of testimony by witnesses as to the substance of the complained-of exhibit without defense counsel's

objection cured the error, if any, in the admission of the exhibit. *See Lane*, 151 S.W.3d at 192-93; *Leday*, 983 S.W.2d at 718. We overrule issue six.

## *Conclusion*

Having found no reversible error, we affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed October 23, 2014
Do not publish
[CR25]

