Kevin Wayne ROTENBERRY,
Appellant,

v.

The STATE of Texas State.

No. 2–06–164–CR.

Court of Appeals of Texas,
Fort Worth.

Oct. 18, 2007.

Rehearing Overruled Dec. 13, 2007.

Davis McCown, Hurst, for appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Chief of the Appellate Division, Helena F. Faulkner, Alan Levy and Christy Jack, Asst. Dist. Attys. for Tarrant County, Fort Worth, for appellee.

PANEL A: CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

## OPINION

ANNE GARDNER, Justice.

Appellant Kevin Wayne Rotenberry appeals his conviction for tampering with physical evidence. Because the indictment failed to state an offense, we vacate the trial court's judgment and dismiss the indictment.

## Background

The significant facts are largely uncontested. Appellant's grandmother, Peggy Dudley, was at one time married to a man named Patrick Cunningham. Cunningham was last seen alive in 1996. Peggy divorced Cunningham in November 1996, claiming that he had abandoned her in August 1996. Peggy died sometime before October 2003.

In 2003, Appellant's cousin, Dustin Tubbleville, who was in custody for an unrelated offense, told police that Cunningham had been murdered and was buried in the back yard of Appellant's home. Tubbleville said that Appellant had killed Cunningham after Cunningham beat Peggy, carried him in the trunk of his car to his Colleyville home, and with the help of his father, cut up Cunningham's body and buried it in the back yard. Tubbleville also claimed that the family dog dug up the body, so Appellant and his father buried it deeper.

Based on Tubbleville's tip, the Texas Rangers began an investigation into Cunningham's whereabouts that eventually led to the issuance of a warrant to search the premises of Appellant's home. Various law enforcement agencies assembled to execute the warrant on March 31, 2004.

On the morning of March 31, before police executed the warrant, Colleyville Police Officer David Martz contacted Appellant by phone and asked him to come to the Colleyville police station. Appellant reported to the police station as requested, and Officer Martz interviewed him for about an hour. Officer Martz told Appellant that he was investigating Cunningham's disappearance and asked Appellant if he knew where Cunningham was. Cunningham told Officer Martz that he did not know where Cunningham was and that he believed Cunningham might have moved to Florida.

Eventually, Appellant asked permission to leave the police station so that he could go home to get ready for work, and Officer Martz allowed him to leave. As soon as Appellant arrived home, police officers arrived to execute the search warrant. Upon arriving, the officers revealed to Appellant that they had reason to believe that Cunningham's body was buried in the backyard and that they were prepared to tear up the entire yard with a backhoe to find it. Appellant agreed to return to the police station and submit to another interview.

After the police read him his rights, Appellant told them that his grandmother had killed Cunningham, who had a history of physically abusing her, in 1996. He said that after his grandmother killed Cunningham, she called Appellant and asked him to help dispose of the body. According to Appellant, his grandmother, who was familiar with the Colleyville home because she lived there at one time, told him to put Cunningham's body in a disused septic tank in the backyard. Appellant told police that he did as his grandmother asked and put the body in the septic tank.

Based on information provided by Appellant, police located an unused septic tank in the home's backyard and found skeletal remains, later determined through DNA analysis to be Cunningham's, inside the tank.

Appellant was initially charged with Cunningham's murder, but the grand jury indicted him for tampering with or fabricating physical evidence. *See* TEX. PENAL CODE ANN. § 37.09(a)(1) (Vernon 2003). In four counts, the indictment alleged that Appellant concealed an unidentified body in a septic tank on August 1, 2001, August 1, 2002, August 1, 2003, and March 1, 2004.

In November 2004, Appellant was reindicted for tampering with or fabricating physical evidence by "leaving or hiding" the body in the septic tank on March 30, 2004. In December 2004, the State amended the indictment to allege in a second paragraph that Appellant tampered with or fabricated evidence by telling Officer Martz on March 31, 2004, that he did not know where Cunningham was.

Later in December 2004, Appellant was reindicted again. In five paragraphs with minor variations, this third indictment alleged that Appellant "concealed" Cunningham's body by telling Officer Martz on March 31, 2004, that he did not know where Cunningham was with the intent to impair the availability of Cunningham's body as evidence in an investigation.

Finally, Appellant was reindicted a fourth time on February 1, 2006. This last indictment alleged as follows:

[O]n or about March 31, 2004, [Appellant] did then and there, knowing that an investigation into the disappearance of Patrick Cunningham was pending or in progress conceal a thing, to-wit, a human body by telling Detective David Martz that he had not seen Patrick Cunningham since the time that Patrick Cunningham had abandoned [his grandmother] and that he did not know where Patrick Cunningham was located when in fact the defendant had hidden the body of Patrick Cunningham in a septic tank at the residence of Richard Rotenberry with the intent to impair its availability as evidence in the investigation.

In a second paragraph, the indictment made the identical allegation but recited the street address of the home where the body was found.

Appellant filed a motion to quash the final indictment for failing to allege an offense, and the trial court denied the motion. A jury found Appellant guilty as alleged in the indictment and assessed punishment of eight years' confinement,

suspended for ten years. The trial court sentenced Appellant accordingly.

## Discussion

In his fourth point, Appellant argues that the trial court erred by denying his motion to quash the indictment because the indictment failed to state an offense. Specifically, Appellant contends that he did not "conceal physical evidence" when he told Officer Martz that he did not know where Cunningham was. We agree.

■■ Upon the filing of a timely motion to quash, an indictment must be analyzed to determine whether it states on its face the facts necessary to allege that an offense was committed, to bar a subsequent prosecution for the same offense, and to give the accused notice of the precise offense with which he is charged. *DeVaughn v. State,* 749 S.W.2d 62, 67 (Tex. Crim.App.1988). The indictment must state facts which, if proved, show a violation of the law; the indictment must be dismissed if such facts would not constitute a criminal offense. *Posey v. State,* 545 S.W.2d 162, 163 (Tex.Crim.App.1977); *State v. Williams,* 780 S.W.2d 891, 894 (Tex.App.-San Antonio 1989, no pet.). An indictment that fails to allege an offense is so defective that it cannot vest jurisdiction. TEX. CONST. art. V, § 12(b); *Studer v. State,* 799 S.W.2d 263, 272–73 (Tex.Crim. App.1990). Whether an indictment alleges an offense is a question of law subject to de novo review. *State v. Moff,* 154 S.W.3d 599, 601 (Tex.Crim.App.2004).

Under penal code section 37.09, captioned "Tampering With or Fabricating Physical Evidence," a person commits a third-degree felony if, knowing that an investigation or official proceeding is pending or in progress, he "alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence" in the investi-

gation or official proceeding. TEX. PENAL CODE ANN. § 37.09(a)(1).

■ The indictment alleged that Appellant concealed Cunningham's body by telling Officer Martz that he did not know where Cunningham was. It is crucial to identify and distinguish between the two acts of concealment comprising Appellant's conduct. Appellant concealed *physical evidence*—Cunningham's body—when he hid the body in the septic tank. He concealed *information*—the fact that Cunningham was dead and the location of the body-when he told Officer Martz that he did not know where Cunningham was. The distinction between *physical evidence* and *information* is the crux of this case.

The State could not charge Appellant with concealing physical evidence by hiding Cunningham's body in the septic tank in 1996 because the three-year statute of limitations expired before the indictment was presented to the grand jury in 2004. *See* TEX.CODE CRIM. PROC. ANN. arts. 12.01(6) (Vernon Supp. 2006), 12.04, 12.06 (Vernon 2005). Instead, the State charged Appellant with concealing physical evidence by telling Officer Martz on March 31, 2004 that he did not know where Cunningham was.

■■ The State's theory of liability is flawed because when Appellant lied to Officer Martz on March 31, 2004, he concealed *information,* not *physical evidence.* Section 37.09 criminalizes the concealment of physical evidence, not the concealment of information. TEX. PENAL CODE ANN. § 37.09(a)(1) ("A person commits an offense if ... he ... conceals any record, document, or thing . . . ."). It bears repeating that the statute under which Appellant was indicted and tried is captioned "Tampering With or Fabricating *Physical* Evidence." *Id.* § 37.09 (emphasis added). The caption is one factor courts may con-

sider when construing a statute. TEX. GOV'T CODE ANN. § 311.023(7) (Vernon 2005); TEX. PENAL CODE ANN. § 1.05(b) (Vernon 2003) (providing that government code chapter 311 applies to the construction of the penal code).[1]

■ Another factor courts may consider when interpreting a statute is laws on the same or similar subject. TEX. GOV'T CODE ANN. § 311.023(4). The two sections of the penal code immediately preceding section 37.09 criminalize the concealment of *information* when a person makes a false statement to law enforcement officials material to a criminal investigation or relating to a missing person. Under section 37.08, "False Report to Peace Officer or Law Enforcement Employee," a person commits a Class B misdemeanor if, with intent to deceive, he knowingly makes a false statement that is material to a criminal investigation and makes the statement to a peace officer conducting the investigation. TEX. PENAL CODE ANN. § 37.08 (Vernon 2003). Under section 37.081, "False Report Regarding Missing Child or Missing Person," a person commits a Class C misdemeanor if, with intent to deceive, he knowingly makes a false statement to a law enforcement officer relating to a missing person. *Id.* § 37.081 (Vernon 2003). In this case, an information tracking the language of sections 37.08 or 37.081 might have been sufficient to allege an offense; the indictment tracking the language of section 37.09 was not sufficient. Lying to conceal information material to an investi-

gation is a crime, but it is not a violation of section 37.09.

The State relies on two cases as support for its position that one may conceal information, and therefore commit an offense under section 37.09, by making a verbal misrepresentation to law enforcement officers. *See King v. State,* 76 S.W.3d 659 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *Sanford v. State,* No. 12–04–00330–CR, 2006 WL 1119257 (Tex.App.-Tyler April 28, 2006, pet. ref'd) (mem.op.) (not designated for publication). Both of those cases involved prosecution under penal code section 38.05, which provides that a person commits an offense if he "harbors or conceals" another with the intent to hinder the other's arrest or prosecution. *King,* 76 S.W.3d at 660; *Sanford,* 2006 WL 1119257, at *1; *see* TEX. PENAL CODE ANN. § 38.05. (Vernon Supp. 2006) In both cases, the appellants were convicted for hindering apprehension of another by telling the police that a person sought by police was not at a particular location when in fact the person was at that location—the appellant's residence in *King* and the appellant's car in *Sanford. King,* 76 S.W.3d at 660; *Sanford,* 2006 WL 1119257, at *1.

The case before us is distinguishable from *King* and *Sanford.* First, in *King* the question on appeal was the sufficiency of the evidence to show the appellant's *intent* to hinder the fugitive's apprehension; thus, *King* offers no guidance as to what

---

1. In *Boykin v. State,* the court of criminal appeals noted that "[a]lthough Section 311.023 ... invites, but does not require, courts to consider extratextual factors when the statutes in question are not ambiguous, such an invitation should be declined" unless the language of the statute is ambiguous or would lead to an absurd result. 818 S.W.2d 782, 786 & n. 4 (Tex.Crim.App.1991). In *Lanford v. Fourteenth Court of Appeals,* the court of criminal appeals held that an ambi-

guity exists and reference to extratextual factors is appropriate when the text of a statute is susceptible to two meanings and the parties advocate opposing "polar" interpretations. 847 S.W.2d 581, 587 (Tex.Crim.App.1993) (orig. proceeding). Here, the parties offer polar opposite interpretations of the meaning of the word "conceals" as used in section 37.098(a)(1); thus, under *Lanford,* the statute is ambiguous, and reference to extratextual factors such as the caption is appropriate.

does or does not constitute concealment. *See King,* 76 S.W.3d at 662.

Second, in *Sanford,* the appellant was tried for "harboring or concealing" the fugitive, and the court did not distinguish between "harbor" and "conceal." *Sanford,* 2006 WL 1119257, at *2 ("[Appellant's misrepresentation] served to *conceal or harbor* [the fugitive], if only for a short time.") (emphasis added).

Third, and most significant, is the difference between the relevant statutes themselves. In this connection, we must also consider our recent decision in *Chase v. State* along with *Sanford* and *King. See Chase v. State,* Nos. 2–06–00063–CR, 2–06–00064–CR, 2007 WL 866221 (Tex.App.-Fort Worth March 22, 2007, pet. ref'd) (not designated for publication). In *Chase,* we held the evidence legally and factually sufficient to support convictions for hindering a secured creditor under penal code section 32.33 when the defendants "concealed" the secured property—a car—by refusing to disclose its location to the creditor. *Id.* at *2–3. While all three statutes—sections 32.33, 38.05, and 37.09—make it a crime to "conceal" something, none of them define the term "conceal," and the differences between the statutes compel the application of different definitions. *See* TEX. PENAL CODE ANN. §§ 32.33 (Vernon 2003), 37.09, 38.05.

■ When statutory words are not defined, we give words their plain meanings—unless the act clearly shows that they were used in some other sense. *Daniels v. State,* 754 S.W.2d 214, 219 (Tex. Crim.App.1988); *Oler v. State,* 998 S.W.2d 363, 368 (Tex.App.-Dallas 1999, pet. ref'd, untimely filed). The dictionary provides two meanings for "conceal": "1. The act of refraining from disclosure; esp., an act by which one prevents or hinders the discovery of something; a cover-up. 2. The act of

removing from sight or notice; hiding." BLACK'S LAW DICTIONARY 306 (8th ed. 2004).

To determine in what sense the Legislature used of the word "conceal" in the various statutes, we look to the statute's captions. Section 32.33 is captioned "*Hindering* Secured Creditors." TEX. PENAL CODE ANN. § 32.33 (emphasis added). Section 38.05 is captioned "*Hindering* Apprehension or Prosecution." *Id.* § 38.05 (emphasis added). Section 37.09, by contrast, is captioned "*Tampering With* or *Fabricating* Physical Evidence." *Id.* § 37.09 (emphasis added).

We now compare the definitions of the words "tampering with or fabricating" as used in the caption of the statute relevant to this case and the term "hindering" as used in the other statutes. "Tampering" means "the act of altering a thing; esp., the act of illegally altering a document or product, such as written evidence or a consumer good." BLACK'S LAW DICTIONARY 1494 (8th ed. 2004). "Fabricate" means to invent, forge, or devise falsely. *Id.* at 627. "Hindering" means to obstruct or delay progress. WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 571 (1983).

Lying about the presence of a fugitive will "obstruct or delay" the apprehension of the fugitive; thus, in the context of section 38.05, lying to police could constitute "concealing." Likewise, refusing to disclose the location of secured property to a creditor is will "obstruct or delay" the creditor's recovery of the property and thus "conceals" the property under section 32.33.

■ But lying to police about the location of physical evidence does not "alter, invent, or forge" physical evidence. Thus, "conceal" in the context of "tampering with or fabricating physical evidence" does not fairly encompass the act of lying to police. It would encompass the act of actually hiding the evidence under the second defi-

nition of "conceal"—"the act of removing from sight or notice; hiding"—but that is not what the grand jury indicted Appellant for (because the statute of limitations had long since run). The other acts prohibited by section 37.09—"alter" and "destroy"—highlight the relatively restricted scope of the statute to acts that physically manipulate the evidence in question.

In summary, the word "conceal" must be read in light of the various statutes' captions. The difference between the captions—"hindering" in the two, "tampering with or fabricating" in the one-compels different interpretations of the word "conceal." While "concealing" by lying or withholding information is "hindering," it is not "tampering with or fabricating." Thus, while the word "conceal" as used in sections 32.33 and 38.05 reasonably includes both "the act of refraining from disclosure" and "the act of removing from sight or notice or hiding," the caption and other terms in section 37.09 clearly show that "conceal" is limited to the latter sense in the statute relevant to this case. Therefore, the interpretations of the term "conceal" in *Sanford, King,* and *Chase* do not guide our interpretation of the same term in this case.

We hold that the indictment failed as a matter of law to allege an offense under penal code section 37.09, and we sustain Appellant's fourth point. Because his fourth point disposes of the entire appeal, we do not consider his other points. *See* Tex.R.App. P. 47.1. We vacate the trial court's judgment and dismiss the indictment. *See* Tex.R.App. P. 43.2(e).

CAYCE, C.J. filed a dissenting opinion.

1. Tex. Penal Code Ann. § 37.09(a)(1) (Vernon 2003) (emphasis added).

2. *R.R.E. v. Glenn,* 884 S.W.2d 189, 192 (Tex. App.-Fort Worth 1994, writ denied).

JOHN CAYCE, Chief Justice, dissenting.

I respectfully dissent. The majority's interpretation of section 37.09 of the Texas Penal Code fails to give the language of the statute its plain meaning and is in conflict with a prior recent opinion of this court defining "conceals" in a different section of the penal code.

The pertinent language of section 37.09(a)(1) defines the offense of "Tampering With or Fabricating Physical Evidence" as follows:

(a) A person commits an offense if, knowing that an investigation or official proceeding is pending or in progress, he:

(1) alters, destroys, or *conceals* any . . . thing with intent to impair its . . . availability as evidence in the investigation or official proceeding.[1]

Section 37.09 does not, however, define "conceals."

In construing a statute, our primary responsibility is to give effect to the legislature's intent as expressed in the language of the statute.[2] When the language of the statute is unambiguous, we must give effect to the plain, ordinary, common meaning of the words unless doing so would lead to absurd results.[3] "Words and phrases shall be read in context and construed according to the rules of grammar and common usage."[4] When statutory words are not defined, we give words their plain meaning without regard to distinction between construction of penal laws and laws on other subjects, unless the act

3. *State v. Hardy,* 963 S.W.2d 516, 519 (Tex. Crim.App.1997).

4. Tex. Gov't Code Ann. § 311.011(a) (Vernon 2005).

clearly shows that they were used in some other sense.[5]

In *Chase v. State,* Justice Gardner, writing for another panel of this court, defined the word "conceals" in section 32.33 of the penal code as to "keep from the knowledge and observation of others," "refrain from disclosing or divulging," and "hide, secrete, or withhold from the knowledge of others."[6] Based on this definition, the court held that evidence showing that "[a]ppellants kept the vehicle's location from the knowledge of the Credit Union" and "refrained from disclosing or divulging its location to the Credit Union," was legally sufficient to prove that the appellants *concealed* the vehicle under section 32.33(b) of the penal code.[7]

The majority acknowledges the same universally recognized definition of "conceals" that we adopted in *Chase,* but it holds that the word means something different here. According to the majority, the legislature intended that the word be given a much narrower definition when used in section 37.09 because *the caption* of section 37.09 ("Tampering With or Fabricating Physical Evidence") is different than the caption of section 32.33 ("Hindering Secured Creditors"). Thus, the majority suggests that when construing section 32.33 of the penal code we must give "conceals" its plain meaning, but when construing section 37.09 of the code we may disregard its plain meaning in favor of a definition that we think better fits the statute's caption. This "double standard" of statutory construction is without precedent and results in the majority's rewriting section 37.09 by giving "conceals" a narrowly circumscribed definition that the legislature itself did not give it.

When called upon to interpret a statute, it is not our function as a court to give a statute a meaning that the legislature did not clearly intend simply because we disagree with the operation of the statute as written. Yet, this is what the majority has done here. If the legislature had intended that the definition of "conceals" in section 37.09 exclude "the act of refraining from disclosure"—conduct that the majority concedes is reasonably included within the definition of "conceals" as used in section 37.09—the legislature could have easily said so. Nothing in section 37.09 or its caption, however, evidences such an intent.

The word "conceals" in section 37.09 of the penal code has the same plain meaning as the word "conceals" in section 32.33 of the code. This meaning has not changed since *Chase* was decided, and nothing in section 37.09 or any other part of the penal code "clearly shows" that the word was intended by the legislature to be used in some other sense than we held it was to be used in section 32.33.[8] As we recognized in *Chase,* because "conceals" is not specifically defined, the jury was free to read it

---

**5.** *Daniels v. State,* 754 S.W.2d 214, 219 (Tex. Crim.App.1988); *Oler v. State,* 998 S.W.2d 363, 368 (Tex.App.-Dallas 1999, pet. ref'd, untimely filed).

**6.** *Chase v. State,* Nos. 02–06–00063–CR, 02–06–00064–CR, 2007 WL 866221, at *2 (Tex. App.-Fort Worth Mar. 22, 2007, pet. ref'd); *see Plummer v. State,* No. 05–99–01826–CR, 2000 WL 1690194, at *4 (Tex.App.-Dallas Nov.13, 2000, no pet.); *see also Anzaldua v. State,* 696 S.W.2d 911, 912 (Tex.Crim.App. 1985) (op. on reh'g) (defining "conceal" as "to hide, secrete, withhold from the knowl-

edge of others; to withdraw from observation"). A person commits an offense under section 32.33 "if, with intent to hinder enforcement of that interest or lien, he destroys, removes, *conceals,* encumbers, or otherwise harms or reduces the value of the property." TEX. PENAL CODE ANN. § 32.33(b) (Vernon 2003) (emphasis added).

**7.** *Chase,* 2007 WL 866221, at *2–3.

**8.** *See Daniels,* 754 S.W.2d at 219.

to have "any meaning which is acceptable in common parlance." [9]   This is what the jury did in this case.

Because the evidence was sufficient to show that appellant withheld information regarding the location of Cunningham's body with intent to prevent it from being available as evidence in a criminal investigation, the jury properly found him guilty under section 37.09 of the penal code.   We should, therefore, affirm the judgment of the trial court.

For all of these reasons, I dissent.

---

**9.** *Chase,* 2007 WL 866221, at *2; *see Denton v. State,* 911 S.W.2d 388, 390 (Tex.Crim.App. 1995); *Oler,* 998 S.W.2d at 368; *Urbanski v.* *State,* 993 S.W.2d 789, 793 (Tex.App.-Dallas 1999, no pet.).