Cause No. _____ **992-15**

IN THE
COURT OF
CRIMINAL APPEALS
OF TEXAS

ORIGINAL

RECEIVED IN
COURT OF CRIMINAL APPEALS

AUG 14 2015

Abel Acosta, Clerk

ANTWAIN BURKS
PETITIONER, PRO SE

VS.

THE STATE OF TEXAS

PETITIONER IN CAUSE NO. 14-14-00166-cr
TRIAL COURT NUMBER  12-DCR-061196
from the 400th District Court of
Fort Bend County, Texas
and from the
Fourteenth District Court of Appeals
Houston, Texas

## PETITION FOR DISCRETIONARY REVIEW

Antwain Burks  # 1913867
Ramsey One Unit
1100 FM 655
Rosharon, Texas  77583

FILED IN
COURT OF CRIMINAL APPEALS

AUG 14 2015

Abel Acosta, Clerk

I

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.......................................... II

STATEMENT REGARDING ORAL ARGUEMENTS............................. 1

STATEMENT OF THE CASE.......................................... 1

STATEMENT OF THE PROCEDURAL HISTORY............................ 2

GROUND FOR REVIEW #1.......................................... 2

PETITIONER'S RECAP OF HIS CLAIM................................ 5

PRAYER FOR RELIEF............................................. 12

CERTIFICATE OF SERVICE....................................... 12

## CASE LAW

SPECTOR V. STATE 746 S.W.2d 945, 946 (Tex. App - Austin 1988).... 10

ROTENBERRY V. STATE 245 S.W.3d 583, (Tex. App - Fort Worth 2007). 10

STEWART V. STATE 240 S.W.3d 872, 874 (Tex. Crim App 2007)........ 11

## STATUTES AND RULES

TEXAS PENAL CODE 37.09....................................... 1,4,10,11

TEX CODE CRIM. PROC. §11.07.................................... 6

TEX RULES OF APP. PROC. 66.3(a)(c)(f)......................... 11

## CONSTITUTIONAL PROVISIONS

Petitioner proffers that the state has violated his consitutional
right to the United States Constitution pursuant to those provisions
outlined in art. 7 and 14 "Due Process" as well as the Texas Constitution
art. 1 § 9 and 10.

Cause No. _____

| | | |
|---|---|---|
| Antwain Burks, Petitioner | § | PETITION IN CAUSE NO. CR-14-14-00166 |
| | § | FROM THE 400th DISTRICT COURT |
| vs. | § | FORT BEND COUNTY, TEXAS |
| | § | AND THE FOURTEENTH COURT |
| The State of Texas | § | OF APPEALS, HOUSTON, TEXAS |

_____

## PETITION FOR DISCRETIONARY REVIEW

===================================================================

Antwain Burks, Petitioner, Pro Se, herein petitions this Honorable Court to review the Judgment from the fourteenth court of appeals affirming his conviction for "Tampering with Evidence" Penal Code (Texas) § 37.09 in cause No. 14-14-00166-cr.

## STATEMENT REGARDING ORAL ARGUEMENT

The ground - for review set forth in this petition concerns conflicting points of law and opinions of the Court of Appeals on the same points of law, and oral arguement would be helpful to the court in distinguishing legal authorites and arriving at the conclusion that is consistant with proper legal analysis.

## STATEMENT OF THE CASE

The petitioner was convicted of the offense of "Tampering with Evidence" by allegedly moving a corpse; the punishment was assessed at sixteen (16) years in the Texas Department of Criminal Justice Institutional Division, herein after TDCJ.

1

and Burks confinement was affirmed by the Fourteenth Court of Appeals on July 21, 2015.

Petitioner Attorney Notifed him of the Appeals Court's decision appr. one week later, whereat, Petitioner has submitted his Motion for extension of time to file this PDR.

## STATEMENT OF THE PROCEDURAL HISTORY

The Fourteenth Court of Appeals rendered it's decision affirming Petitioners Conviction on July 21, 2015, Petitioner has no other filings on this issue in any other court State or Federal and purports to have this Petition filed in a timely manner.

## GROUND FOR REVIEW

## # 1

Petitioner avers that the Honorable Court of Appeals for the Fourteenth District erred in holding that the Trial Court submitted sufficient evidence of Tampering with Evidence when in fact the evidence did not support the finding that Petitioner "Tampered with Evidence" at all; more specifically, a "CORPSE".

Here the State contends that this petitioner , per the Indictment, "[T]ampered with the corpse of the complainant with the intent to impair its availability as evidence in a subsequent or official Proceeding." , with such, Petitioner proffers several aspects of this case that have been distorted and misapplied to this offense.

Petitioner will give arguements in specific order to clarify his Arguement herein..

a. The sole allegation herein is whether or not the Petitioner tampered with a corpse and nothing else, yet, the Fourteenth Appeals Court would like to muddy the waters with subject matter that is inconsistant with the charge that intended to prejudice the facts.

b. Petitioner proffers that the only issue at hand is whether or not  he tampered with a corpse with the specific intent to impair its availability as evidence.

c. Petitioner states that not even a scintilla of evidence was produced to vehemenently state the Complainant was in fact a corpse when he was removed from the petitioners vehicle, and this is the most relevant fact and the foundation of the states case.

d. Petitioner was with the complainant on the night of his death, Petitioner spoke to his girlfriend at appr. 1:03am, sometime after that the complainant was shot by and unknown person.

e. At appr. 1:20 to 1:30am a witness found the complainant lying face down in the street, [Apparently] deceased, at which time a phone call was made to the police, who arrived at appr. 1:50am and thus determined the complainant was dead.

f.Under Penal Code 37.09 T.C.C.P., captioned "Tampering with or Fabricating Physical Evidence", a person commits a second degree felony, if the thing altered, destroyed or concealed is a Human Corpse.

37.09(a) reads "A person commits an offense if knowing that an investigation or official proceeding is pending or in progress".

The situation at hand, is the petitioner has been charged with moving the corpse (Complainant) from the interior of his vehicle to the ground located outside of his vehicle and then leaving the scene.  The states theory of petitioner altering, destroying or concealing a corpse is flawed simply because 1) the corpse was not altered per the legal definition, 2) the corpse was not destroyed, and 3) the corpse was not concealed - evident by it being found moments later by a witness.

With such what actually occurred was the petitioner concealed information of the crime and removed the vehicle with its evidence, not tampering with a corpse, moreover, the Statute here deals with Physcial evidence, not infomation of a crime and the state fails to show with sufficient evidence that this petitioner did any of the elements needed to convict him of Penal Code 37.09.

Further, Petitioner proffers that no evidence as to the indentification of the shooter could have been determined with the complainant sitting in the car deceased or lying on the ground deceased and the state has failed to pin-point just what evidence was altered, destroyed or concealed, it certainly was not the corpse and no other or further information could have been discovered with the complainant dead in the car, the rsult or still the same and the evidence is still the same, nothing was lost in this situation, nothing was destroyed and nothing concealed.

4

The sole point of error in Petitioners Appeal was the sufficiency of the evidence, and within the Fourteenth Appelant courts findings there are 19 seperate paragraphs, to which the appellant court would intend introduce as evidence submitted during trial, and this is a complete diversionary tactic intended to misdirect and distort the truth.

Petitioner argues that the one main crucial question herein is "Was the complainant dead when Petitioner ejected him from his vehicle?" which is the only way the petitioner can be guilty of this offense, and again not one shred of evidence was ever introduced ~to~ to 100% positively state the complainant was deceased when he left the Petitioner's car.

Petitioner will recap this claim:

1. Petitioner made such comments that the complainant did not make any sounds after he was shot, but this alone is not sufficient to determine that the complainant was dead, as is, it is not by a rule of thumb that every person who has been shot, in the head or otherwise, should make noise, but more importantly, this comment was made with respect to complainant's death to his Mother, when she asked if he 'Died Instantly', and such a statement was intended to ease the pain of the deceased's Mother and this statement should not have been taken as such a bold and utterly conclusive rendition of the complainants life or death, especially by a person not trained in medical procedures and has never had experience in dealing with death.

5

2. The State also submits information about the petitioners vehicle, whereat, there was "Physical evidence", yet, Petitioner was not charged for tampering with this evidence, therefore its introduction was prejudical and not the subject of this case, yet, the Fourteenth Appeals court has made it a part of the record herein.

3. The medical examiner testified about two gunshot wounds and in short was able to proudly state the the first gunshot wound was not one that would cause "Instant death" and yet convientantly failed to discuss whether or not the second gunshot wound was immediately Life-Threatening. With such, this testimony left open the plain and simple fact that neither gunshot was one that would have caused "[I]nstant Death", leaving open the fact that Complainant could have more likely than not survived both gunshot wounds and was in fact _alive_ when he was ejected from the vehicle, DESTROYING the legitimate ends of the states case.

4. The Appellate Court proffers that this Petitioner did not assert any arguements with respects to the knowledge of the petitioner knowing an investigation was pending or in progress and even if Petitioner would have worked this into his appeal they would have denied it, with such, petitioner will not adddress this subject, and will challenge it via Habeas Corpus §11.07.

5. Petitioner further argues that evidence was presented by the state, thru the testimony of its expert witness and the

Detective (Richard Martinez), that the complainant had a tear in his boxer shorts and an abrasion under his right eye, and subsequently testified that these related to being pushed out of a car or from an altercation. More importantly, the Medical Examiner also testified that an abrasion found on the complainants face and a scraped knee were caused by the complainant being pushed out of the car by the petitioner, but what is most important is that the records are clear and stated that this complainant was picked up from the Jail were he was released on bond, however what the state failed to introduce was the fact that the complainant was in jail for an assault charge, and this assault charge could have very well caused the injuries to the knee and the abrasion to the eye of the complainant.

6. Petitioners goal herein is to establish that the Fourteenth Court of Appeals erred in affirming this case based upon the sufficiency of the evidence, and the arguement of "Time of Death" of the complainant is the pillar of the arguement, not spent shell casing, misfired bullets, off-handed statements to others, scrapped knees, eyes with abrasions, or any other issues, again, the sole issue is "Was the complainant alive or dead when he left the vehicle?" and this is a question only God can answer, simply because, as it stands, not one piece of evidence has been presented to determine if the complainant was dead when he left the vehicle, or if Petitioner intended to destroy, alter or conceal evidence of the corpse.

7. The state would further allude to the "Drag" marks at the scene, and would like for this Honorable court to believe that these marks could have only come from being dragged away from the vehicle, but never really knowing where the vehicle was at the time of the shooting, nor if the complainant was dragged or if he pulled himself, this because no one testified as to the position of the body when found, (i.e. was the complainant in a position with his hands in front of him or under him,) was the evidence consistant with being dragged by the feet or by the hands ? Was any book-in photos from the jail introduced to show the complainant lacked the abrasion(s) to his face prior to his death or were they caused by the alleged fall from the vehicle.

8. The photographs from the scene showed a trail of blood. the blood was not pooled in the way it would if the blood were flowing onto the concrete from the complainants body, instead the blood trailed in straight lines, which suggested that it resulted from the body being dragged" (Memorandum Opinion pg 5-6), yet,even this is not conclusive as it is based upon the amount of blood and the rate of the heart, the length of the drag marks and any foot prints around the body.

9. Again this Petitioners sole arguement herein is the lack of evidence produced at trial to determine if the petitioner tampered with evidence (Corpse) and this Petitioner relies

soley upon the fundamental truth;that there is no evidence to determine the exact minute of death and where the complainant died at. Herein, the Appellate court proffers that there exist both lay testimony and expert testimony about the physical evidence from which a rational jury could have determined that the complainant was dead at the time he exited Petitioners car. Petitioner can only tender that there is no scientific or medical evidence on earth that could determine the exact time of complainants death, as death can only be determined by a medical person or a person who can whole heartedly state there is not any trace of heart beat left, no breath is being taken and life is gone from the body, and herein this is impossible from the evidence as,no one saw the gun-shot, no one rushed to the scene, officers did not arrived on the scene until approx. 20 to 30 minutes after the body was discovered by the witness and even the witness was unable to determine if the complainant was alive or dead, there was blood in the car, indicating complainant had a heart beat sufficient enough to force blood from his body, therefore, there was life, there was blood on the ground, yet conveniently, testimony fails to state if the amount is condusive to a heart beat, weak, slow, irregular, or none at all, again , there is just not enough evidence to conclude at what time death occured or where it occured, and the state has simply painted the picture it wanted, and simply neglected those crucial questions that could have produced evidence sufficent enough to acquite this petitioner.

9

Petitioner, argues further that one of the elements of Penal Code 37.09 is that evidence is the corpse, and that the corpse must have been altered, destroyed, or concealed, and this is done within the meaning of Penal Code 37.09(a)(1) and (c) when the evidentiary value is destroyed. And the only way evidence herein (corpse) can be destroyed, altered,or concealed is when the part (body) recovered has less evidentiary value than the body would have been if left inside the car - Spector v. State 746 S.W2d 945, 946 (Tex. App Austin 1988 no pet.)

Here, even if Petitioner ejected complainant from his vehicle, the evidence would not have been destroyed or altered because no shooter was ever in his vehicle, nor was there any evidence within the vehicle that would have produced any other result for the Police, then, they already had or would ever have had, the purpose of the investigation was to produce who shot the complainant, not where the complainant was sitting or located when he died, therefore the states theory of liability herein is flawed because petitioner did not conceal, alter or destroy a corpse, he merely concealed information by not reporting the offense to police, not destroying, altering or concealing evidence, and the Penal Code in question here criminalizes the concealment, alteration of destruction of physical evidence, not the concealment of information. Rotenberry v. State 245 S.W.3d 583, 586 (Tex. App. - Fort Worth 2007, pet. ref'd).

Moreover, It is not enough the Petitioner knew that his actions

10

would impair the availabilty of the corpse as evidence, here

it is imperative that the state prove Petitioner intended [Emphasis]

to impair the corpse as evidence or impair its availability.

That is , altering, destroying, or concealing the evidence, which

must have been petitioners conscious objective or desire,

Stewart v. State 240 S.W.3d 872, 874 (Tex. Crim. App. 2007)


In close, Petitioner avers that the evidence was insufficient

to support his conviction.


Petitioner states with such and pursuant to Texas Rules of

App. Proc. 66.3 (a)(c)(f) the Court of Criminal Appeals may

consider in deciding to grant Discretionary Review:

    (a) Whether a court of appeals has decided an issue
       which conflicts with another court of appeals
           decision on the same issue;

    (c) Whether a court of appeals decision conflicts
       with the applicable decision of the Court
          of Criminal Appeals;

    (f) Whether the court of appeals has so far departed
  from the accepted and usual course of Judicial proceedings
  or so far sanctioned such a departure by a lower--court
as to call for an exercise of the Court of Criminal Appeals'
         Power of Supervision.

Petitioner proffers that the Fourteenth Court of Appeals has

misinterpreted the language of Penal Code 37.09 and it's elements

needed for conviction, and that the evidence must support the

finding of guilty in this instant offense, herein, Petitioner

has made a showing that there is no evidence that he altered,

destroyed or concealed any evidence or corpse and merely failed

to make a report of the circumstances surrounding this offense.

11

## PRAYER FOR RELIEF

For the reasons herein alleged, the Petitioner was denied a fair trial in cause No. 14-14-00166-CR in that the evidence was insufficient to support his conviction and therefore, Petitioner prays this Honorable Court grant this petition, and upon reviewing the Judgment entered below, reverse this cause and remand it for new trial or Acquittal.

Respectfully Submitted,

*Antwain Burks*

Antwain Burks, Petitioner, Pro Se

Ramsey One Unit

1100 FM 655

Rosharon, Texas 77583

## CERTIFICATE OF SERVICE

This is to certify that no copies of this PDR have been mailed to anyone other than the District Attorney of Fort Bend County, Texas and the State Prosecuting Attorney, by delivery of a true and correct copy to them all by deposting the same, post-paid in an official depository for the United States Postal Service on the Ramsey One Unit, 1100 FM 655, Rosharon, Texas 77582, enclosed in an envelope properly addressed to those mentioned above.

*Antwain Burks*

Antwain Burks, Petitioner, Pro Se

12

**Affirmed and Memorandum Opinion filed July 21, 2015.**



In The

## Fourteenth Court of Appeals

### NO. 14-14-00166-CR

## ANTWAIN MAURICE BURKS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 12-DCR-061196**

# MEMORANDUM OPINION

In a single issue, appellant Antwain Maurice Burks challenges the sufficiency of the evidence supporting his conviction for tampering with evidence. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant and the complainant, Dontay Leonard, were together on the night the complainant was murdered. That evening, appellant drove the complainant to a

night club. The complainant was in appellant's company at 1:03 a.m., when the complainant spoke with his girlfriend on the telephone. Within twenty minutes of that phone call, the complainant's dead body lay face down in the street. The cause of death was two gunshot wounds.

Appellant relayed different stories to different people about what happened that night. He generally maintained that the complainant got into a fight with a club patron and that at least one individual approached them while they were in their car on the way home and killed the complainant. Appellant also admitted to one person that he pushed the complainant out of his vehicle and into the street.

Appellant was arrested and charged with tampering with evidence, a second degree felony because the evidence was a human corpse. Appellant pleaded "not guilty." At trial, the jury found appellant guilty and assessed punishment at sixteen years' confinement.

## II. TAMPERING WITH EVIDENCE

Appellant asserts the evidence is legally insufficient to prove beyond a reasonable doubt that the complainant was dead when he left appellant's vehicle. In other words, appellant argues the evidence is legally insufficient to prove that he altered, concealed, or destroyed the complainant's corpse as opposed to the complainant's mortally-wounded body.

In evaluating a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe the appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned

unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W. 2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume that the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

The indictment alleged that appellant tampered with the corpse of the complainant with the intent to impair its availability as evidence in a subsequent investigation or official proceeding. A person commits the offense if, knowing that an investigation or official proceeding is pending or in progress, the person alters, destroys, or conceals a human corpse with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding. *See* Tex. Penal Code Ann. § 37.09 (West 2014); *Williams v. State*, 270 S.W.3d 140, 142 (Tex. Crim. App. 2008).

The record contains evidence of the following sequential events leading up to and following the complainant's death:

- On the night the complainant was killed, appellant gave the complainant a ride home from jail after the complainant was bonded out of jail.
- The complainant was in jail for a charge related to his conduct towards the complainant's girlfriend.
- After the complainant was bonded out of jail, the complainant and appellant left, stating that they intended to go to a club.

3

- A witness encountered the complainant's body, face down on the street. The witness estimated the time was between 1:20 a.m. and 1:30 a.m. The witness then called police.

- Police received a call at 1:46 a.m. and arrived on the scene at 1:50 a.m. The paramedics in the ambulance arrived on the scene and determined the complainant was dead. The police could not find any eyewitnesses or anyone who heard gunshots in the area.

- After the complainant's brother learned the complainant had been killed, the complainant's brother called appellant. At first appellant would not speak with him. Appellant finally told the complainant's brother that appellant and the complainant had gone to the night club and the complainant had gotten into an altercation with someone. Then, appellant and the complainant left the club and were joy riding and smoking when someone approached the car and put a gun to the complainant's head. Appellant took off running. Appellant stated that the gun shot two times and then it jammed. The complainant's brother asked appellant how he knew the gun jammed but apparently did not receive an answer.

- Appellant's account seemed improbable to the complainant's brother because appellant was injured and using a cane to walk at the time. Appellant did not call anyone after the shooting.

- Appellant's girlfriend spoke to appellant at 1:03 a.m., but could not get in touch with him after that time.

- Appellant's sister testified that appellant told her several conflicting accounts about what happened that night. In one of the accounts appellant indicated he pushed the complainant out of his vehicle.

- The mother of one of the complainant's children testified that she spoke with appellant and asked him whether the complainant died instantly. Appellant indicated that the complainant did not make any sounds.

- The aunt of one of the complainant's children testified that she spoke with appellant and appellant advised that he did not kill the complainant, but he did push him out of the car.

The record also contains testimony about the physical evidence in appellant's car and at the scene where the complainant's body was discovered:

- The medical examiner testified that the complainant suffered two gunshot wounds. The first shot went through the complainant's chest and into his abdomen, where it caused damage to the liver. The medical examiner testified that the first gunshot was not immediately life-threatening because of its location, but without medical treatment could be fatal. The second gunshot entered the left side of appellant's chest and caused damage to the left lung and to the heart and also the liver. The medical examiner did not discuss whether or not the second gunshot was immediately life-threatening.

- Officer Chi Thanh Nguyen testified that he found a bullet that looked like it may have misfired. Officer Nguyen explained it was a whole bullet that was indented as if someone had attempted to fire it, but it had not fired properly.

- Detective Richard Martinez testified that when he discovered the complainant, the complainant's blood was mostly concentrated around his waist area. The way the blood was pooled suggested he was probably seated somewhere and was there long enough for the blood to soak in around his waist and buttocks area.

- Detective Martinez testified that the complainant had a tear in his boxer shorts and an abrasion under his right eye. Detective Martinez said the tear could have come from being pushed out of the car and the abrasion under the right eye was related either to being pushed out of the car or resulted from an altercation.

- Police officers searched appellant's car. They found blood stains in the front seat of the passenger side of the car. Bao Nguyen from the crime lab testified that, to a reasonable degree of scientific certainty, excluding an identical twin, the blood contained in appellant's passenger seat belonged to the complainant.

- Detective Martinez testified that appellant's car was cleaned after the night of the complainant's murder.

- The medical examiner testified that the abrasion on the complainant's face was consistent with the skin being scraped over a rough surface. The medical examiner noted similar abrasions to the complainant's right knee. The medical examiner testified that being pushed out of a vehicle could cause these injuries.

- Photographs from the scene showed a trail of blood. The blood was not pooled in the way it would flow if the blood were flowing onto the

concrete from the complainant's body. Instead, the blood trailed in straight lines, which suggested that it resulted from the body being dragged.

To find appellant guilty of tampering with evidence, the jury needed to find that appellant, knowing an investigation or official proceeding is pending or in progress, altered, destroyed, or concealed, the complainant's body with intent to impair its verity, legibility, or availability as evidence.[1] Appellant's central argument is that without evidence of the "golden hour" at which the complainant died, there is no evidence that the complaint died either in appellant's car or before exiting appellant's car, however that occurred. We disagree. There is both lay testimony and expert testimony about the physical evidence from which a rational jury could have determined that the complaint was dead at the time he exited appellant's vehicle.

As to the physical evidence, the jury heard from the medical examiner that the complainant died from two gunshot wounds, but no witnesses near the complainant's body heard or saw anything, even though at least one witness was at home and awake at the time of the murder, near the area where the complainant's body was found. These facts support an inference that the gunshots occurred elsewhere. The jury also heard evidence from a police officer and the medical examiner that the way the complainant's blood pooled led them to believe the

---

[1] Appellant does not assert the evidence is insufficient to show he knew an investigation or official proceeding was pending or in progress. Even if appellant had asserted these claims, we would conclude the evidence is sufficient to support the jury's verdict. *See Williams*, 270 S.W.3d at 144–45. To the extent appellant argues the evidence is insufficient to prove he altered, concealed, or destroyed a corpse, the record contains sufficient evidence to support the jury's verdict. For example, the jury heard evidence that appellant moved the complainant's body, an act that altered the body's location. *See Carnley v. State*, 366 S.W.3d 830, 836 (Tex. App.—Fort Worth 2012, pet. ref'd); *Ramos v. State*, 351 S.W.3d 913, 914–15 (Tex. App.—Amarillo 2011, pet. ref'd) (holding evidence sufficient to support conviction for tampering with evidence where the record contained evidence the defendant dragged a body). The jury also heard evidence that appellant's actions altered the physical state of the complainant's body. *See Carnley*, 366 S.W.3d at 836; *Ramos*, 351 S.W.3d at 914–15.

complainant was seated when he died. The complainant's blood was found in appellant's car, which confirms testimony that the complainant was in appellant's car when the complainant died. The photos before the jury show the complainant's body and two even trails of blood. In the photos, other than the trails of blood and the substantial amount of blood soaked into the complainant's clothing, there is no blood surrounding the complainant's body. The medical examiner testified that the even trails of blood resulted from blood dripping off a body that was being dragged; they did not result from blood flowing out of a body. The medical examiner explained that blood flowing from a body clots and pools in a way not present in the photos. The jury reasonably could have concluded from this testimony that appellant's blood had stopped flowing from his body by the time his body was moved.

Appellant notes that no witness stated the exact time of the complainant's death and the medical examiner testified that one of the gunshot wounds was not immediately life-threatening based on its location. The lay testimony also supports a rational determination that the complaint was dead when his body left appellant's vehicle. Although no witness stated the exact time of the complainant's death, the jury had evidence that appellant admitted the complainant was dead before appellant pushed his body out of the car. Specifically, the mother of the complainant's child testified that she spoke with appellant after the complainant's death. The mother wanted to know whether the complainant suffered or died instantly and appellant told her the complainant made no sounds, which suggests he died instantly.

In sum, expert testimony that the physical evidence points to blood ceasing to flow from the complainant's body before it left the vehicle and gunshot wounds consistent with a rapid death coupled with lay testimony about appellant's

eyewitness account of the complainant's death support the jury's conclusion that appellant tampered with a human corpse. *See Ramos*, 351 S.W.3d at 914–15.

The jury's verdict is supported by sufficient evidence. *See id.* Accordingly, we overrule appellant's sole issue and affirm the trial court's judgment.

/s/    Kem Thompson Frost
       Chief Justice

Panel consists of Chief Justice Frost and Justices Boyce and McCally.

Do Not Publish — TEX. R. APP. P. 47.2(b).

8