

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0556-18

### KARL DEAN STAHMANN, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### COMAL COUNTY

YEARY, J., filed a dissenting opinion in which KELLER, P.J., and KEEL and SLAUGHTER, JJ., joined.

### DISSENTING OPINION

Appellant was convicted of tampering with physical evidence.[1] On direct appeal, he

challenged the legal sufficiency of the evidence to establish, among other things, that he did

---

[1] *See* TEX. PENAL CODE § 37.09(a)(1) ("A person commits an offense if, knowing that an investigation or official proceeding is pending or in progress, he . . . alters, destroys, or conceals any . . . thing with intent to impair its verity . . . or availability as evidence in the investigation or official proceeding[.]"); *id.* § 37.09(d)(1) ("A person commits an offense if the person . . . knowing that an offense has been committed, alters, destroys, or conceals any . . . thing with intent to impair its verity . . . or availability as evidence in any subsequent investigation of or official proceeding related to the offense[.]").

anything to alter, destroy, or conceal the thing he was alleged to have tampered with. The Thirteenth Court of Appeals agreed and, finding that the evidence did support the lesser-included offense of attempted tampering with physical evidence (and rejecting all of Appellant's claims of trial error), it reversed the trial court's judgment of conviction and remanded the cause for a new punishment proceeding. *Stahmann v. State*, 548 S.W.3d 46 (Tex. App.—Corpus Christi 2018). The issue in this case is whether Appellant "concealed" the alleged object (as opposed to unsuccessfully *attempting* to conceal it). We should reverse the court of appeals' judgment and affirm the trial court's judgment, thereby reinstating Appellant's conviction.

## BACKGROUND

Sometime around 4:30 or 5:00 p.m. on July 1, 2012, Appellant was involved in a collision while making a left hand turn across the oncoming lane of traffic on Highway 46 in Comal County. The Mazda van he was driving was broadsided by a Chevrolet TrailBlazer that was traveling about fifty miles per hour, and the front passenger side of the van was caved in. When two passers-by stopped to assess the situation, they saw Appellant emerge from the driver's side of the van, bleeding from a gash over his eye. A passenger in the van was unconscious. One of the passers-by contacted emergency services on his cell phone. Both passers-by then witnessed Appellant approach a wire "game fence" along the side of the road and toss a brown prescription bottle over the fence. One of the passers-by testified that Appellant "tried to throw it in the brush, but it didn't make it." The bottle came to rest

on the grass next to some shrubbery at the bottom of a tree, still visible to the passers-by.

When a deputy sheriff arrived at the scene, the passers-by directed his attention to the pill bottle and described for him how they had watched Appellant throw it there.[2] Once the deputy sheriff's attention was directed to it, he could also see the bottle as it lay on the far

---

[2] One of the passers-by testified:

Q. All right. Now, this fence, was it a normal fence? In other words, just a wire fence, or was it a boarded up - - like, a picket fence?

A. A wire fence.

Q. So you could see easily through the fence?

A. Yes, sir.

Q. And you could see the bottle in [Appellant's] hand?

A. Yes, sir.

Q. You could see the bottle in the air?

A. Yes, sir.

Q. And you could see it land on the other side?

A. Yes, sir.

Q. And you never lost sight of it?

A. No, sir.

* * *

Q. Okay. And, in fact, when the officer came over, you were able to point it out to him, and it was visible to you. And you could point to him and say, That's where the bottle is?

A. Yes, sir.

side of the game fence.[3] He then reported it to a state trooper who arrived at the scene. After the trooper unsuccessfully attempted to retrieve the pill bottle through the fence with his expandable baton, the deputy sheriff entered the property from a nearby gate and retrieved the bottle. The label indicated that the prescription had been made out to a "James Castaneda," and both the label and an imprint on the pills in the bottle identified them as promethazine, a prescription-only drug. Forensic testing confirmed that the pill bottle contained 2.12 grams of promethazine.[4]

In separate paragraphs of the count of the indictment that alleged tampering with physical evidence,[5] two theories were alleged: that Appellant altered, destroyed, or concealed a thing, "to-wit, a bottle of pills," knowing that an investigation was pending or in progress

---

[3] The deputy sheriff testified:

> Q. Was the pill bottle visible when you found it?

> A. *When I was directed there*, *yes*, I could visually see it.

(Emphasis added.) The deputy sheriff nevertheless maintained that the pill bottle had been "concealed."

[4] The deputy sheriff testified that it is an offense to possess the commonly abused drug promethazine without a prescription. The Department of Public Safety chemist who analyzed the pills also testified that promethazine is categorized as a dangerous drug, and that to legally possess it requires a prescription.

[5] The indictment contained a total of four counts, the first three alleging various theories of aggravated assault and intoxication assault against the passengers in the TrailBlazer, but Appellant was ultimately prosecuted only under the fourth count, which alleged the offense of tampering with physical evidence as described in the text.

(paragraph 1),[6] and knowing that an offense had been committed (paragraph 2),[7] with intent to impair its verity or availability as evidence in the investigation. The jury convicted Appellant without specifying which theory, whether (1) investigation pending or in progress or (2) offense committed, and the trial court assessed his punishment at ten years' confinement in the penitentiary, probated for a term of ten years. Then, on direct appeal, Appellant argued that the evidence was legally insufficient to show that he altered, destroyed, or concealed the pill bottle.

The court of appeals agreed. Noting that the State conceded that there was no evidence to show the pill bottle was destroyed, *Stahmann*, 548 S.W.3d at 54, the court of appeals addressed only whether there was evidence that it had been altered or concealed. The State argued that the pill bottle had been altered because the label was torn and its text was partially smeared when it was recovered by law enforcement. The court of appeals rejected this argument for lack of any evidence that the label had not been torn and smeared before Appellant tossed it over the fence. *Id*. at 54–55.

Turning, then, to whether the evidence demonstrated concealment of the pill bottle, the court of appeals held that it did not because "the evidence established that the pill bottle remained in full sight of bystanders from the time it was thrown by [Appellant], and of police from the time they arrived, until the time it was retrieved as evidence." *Id*. at 56. "Actual

---

[6] *See* TEX. PENAL CODE § 37.09(a)(1) (investigation pending or in progress).

[7] *See* TEX. PENAL CODE § 37.09(d)(1) (offense committed).

concealment requires a showing that the allegedly concealed item was hidden," the court of appeals observed, "removed from sight or notice, or kept from discovery or observation." *Id*. at 57 (citing a definition of "conceal" gleaned from the court of appeals opinion in *Thornton v. State*, 401 S.W.3d 395, 398 (Tex. App.—Amarillo 2013) *reversed on other grounds*, 425 S.W.3d 289 (Tex. Crim. App. 2014)). The court of appeals concluded that "[s]uch evidence is lacking here." *Id*. We granted the State's petition for discretionary review in order to examine the court of appeals' conclusions.

## ANALYSIS

This case turns on a question of statutory construction: What is the scope of the offense as defined by the statute? *See Delay v. State*, 465 S.W.3d 232, 235 (Tex. Crim. App. 2014) ("[S]ometimes appellate review of legal sufficiency involves simply construing the reach of the applicable penal provision in order to decide whether the evidence . . . actually establishes a violation of the law."). We review questions of statutory construction *de novo*. *Lang v. State*, 561 S.W.3d 174, 180 (Tex. Crim. App. 2018). Here the question boils down to whether Appellant's conduct in tossing the prescription pill bottle over the game fence constituted either "altering" or "concealing" it in contemplation of Section 37.09 of the Penal Code. Because I would conclude that the evidence supports a finding that Appellant actually "concealed" the bottle, I will not address whether he may also have "altered" it.

None of these terms—"alters, destroys, or conceals"—is defined in the statute. When not particularly defined by statute, words are to be given the meaning found in their

"common usage." TEX. GOV'T CODE § 311.011. It is appropriate to consult standard dictionaries to construe the ordinary meaning of an undefined statutory term, "and jurors may . . . freely read statutory language to have any meaning which is acceptable in common parlance." *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011) (quoting *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992)).

Resorting to standard dictionary definitions, various courts of appeals have defined the word "conceal" to mean "to hide, to remove from sight or notice; to keep from discovery or observation." *See Thornton v. State*, 401 S.W.3d at 398 (citing *Rotenberry v. State*, 245 S.W.3d 583, 588–89 (Tex. App.—Fort Worth 2007, pet. ref'd), and *Hollingsworth v. State*, 15 S.W.3d 586, 595 (Tex. App.—Austin 2000, no pet.)); *see also Lewis v. State*, 56 S.W.3d 617, 625 (Tex. App.—Texarkana 2001, no pet.) (adopting a dictionary definition of "conceal," namely, "[t]o hide or keep from observation, discovery, or understanding; keep secret[.]"). Webster's New International Dictionary similarly defines "conceal" with a nod to a purpose not just to "hide" a thing from "sight," but also to withhold it from "notice": "**1** **:** to prevent disclosure or recognition of **:** avoid revelation of **:** refrain from revealing **:** withhold knowledge of **:** draw attention from **:** treat so as to be unnoticed . . . **2 :** to place out of sight **:** withdraw from being observed **:** shield from vision or notice". WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE, at 469 (2002). In her concurring opinion in *Thornton*, Presiding Judge Keller remarked that, "[w]hatever else 'conceal' might mean in the context of the tampering with evidence statute, it *at least* means

to remove from sight." 425 S.W.3d at 307 (Keller, P.J., concurring) (emphasis added). That "conceal" means *at least* to "remove from sight" does not mean, of course, that it carries that meaning *exclusively*.

Still, a rational jury could have inferred from Appellant's conduct that he threw the pill bottle over the fence with the intent to relocate it to a place where it would not likely be observed or noticed by accident investigators. Had the passers-by not seen Appellant toss the pill bottle over the game fence and reported that conduct to the investigating officials, it is highly unlikely that those officials would have noticed it. Though it may have remained within sight of anyone who knew to look for it, they certainly would not have recognized its evidentiary significance. In this sense, a jury could rationally conclude that Appellant acted upon the pill bottle in such a way as to "conceal" it—at least for a brief period of time[8]—from those who would be conducting the pending or subsequent "investigation" or "official proceeding" as contemplated by the statute.

Does the fact that Appellant was observed tossing the pill bottle by non-investigating passers-by, who never lost sight of it and were able to call it to the attention of investigators despite Appellant's conduct, mean that he may only be convicted of an inchoate offense—*attempted* tampering with physical evidence? I do not think so, for the reasons that follow.

The word "conceal" is a somewhat relative term, taking its meaning to a certain extent

---

[8] Nothing in the statutory language requires that the thing concealed *remain* concealed for any period of time as a condition of prosecution for the completed offense.

from context. Grammatically, it operates as a transitive verb,[9] and it typically takes both a direct object (here, as specified by the statute, "any record, document, or thing")[10] and an indirect object[11]—some person from whom that direct object is "concealed."[12] But Section 37.09 does not explicitly identify an indirect object—it fails to specify from whom the direct object must be hidden from sight or notice. This lack of specificity creates a latent ambiguity which must be addressed in order to resolve this case: From whom must the "thing" in the statute be concealed? I believe there are three plausible answers.

First, the statute may contemplate that the actor must actually conceal the thing from *everyone* before he may be prosecuted for tampering under a concealment theory.[13] By this understanding of the statute, Appellant would be guilty only of the attempt because he failed

---

[9] *See* William Strunk Jr. & E. B. White, *The Elements of Style* 95 (4th ed. 2000) ("**transitive verb** A verb that requires a direct object to complete its meaning: They *washed* their new car. An *intransitive verb* does not require an object to complete its meaning: The audience *laughed*. Many verbs can be both: The wind *blew* furiously. My car *blew* a gasket.").

[10] *Id*. at 91 ("**direct object** A noun or pronoun that receives the action of a transitive verb. Pearson publishes *books*.").

[11] *Id*. ("**indirect object** A noun or pronoun that indicates to whom or for whom, to what or for what the action of a transitive verb is performed. I asked *her* a question. Ed gave *the door* a kick.").

[12] Both "alter" and "destroy" are also transitive verbs, but neither so readily takes an indirect object as does "conceal." One typically "alters" or "destroys" a thing, but one does not typically alter or destroy that thing *for* or *from* someone or something.

[13] In all three of these plausible scenarios, I of course assume the actor harbors the requisite culpable mental state—knowledge that an investigation or official proceeding is underway or pending, or that an offense has been committed, and a specific intent to impair the verity or availability of the thing that is acted upon as evidence in the investigation or official proceeding.

to remove the pill bottle from the sight or notice of the passers-by. The court of appeals seems to have applied this construction, or something like it, when it held the evidence insufficient to establish concealment because the pill bottle "remained in full sight of bystanders from the time it was thrown by [Appellant], and of police from the time they arrived, until the time it was retrieved as evidence."[14] *Stahmann*, 548 S.W.3d at 56. In other words, because Appellant did not conceal the pill bottle from *everyone*, he cannot have committed a completed offense.

Second, the statute may operate more broadly, contemplating that the actor commits an offense so long as he manages to conceal the thing from *someone—anyone*. Under this construction, Appellant would be guilty of actual concealment because he removed the pill bottle from the notice of *someone/anyone*—that is, everybody *but* the two passers-by. Only because the passers-by alerted the investigating officers to the place where Appellant had tossed it did they (or anybody else) notice it at all.

As a third alternative, we could deduce from the context of the statute that the indirect object of the concealment is a subset of the "anyone/someone" concept: the investigators themselves—those whose pending or in-progress investigations or official proceedings would be thwarted by the concealment. By this understanding, too, Appellant would be guilty of the completed offense, because he acted in such a way as to successfully conceal the pill

---

[14] The record does not support the court of appeals' observation that the pill bottle was "in full sight" of the investigating officers "from the time they arrived[.]" It is more accurate to say that at some point after their arrival it came within their sight, and *thereafter* remained within their sight—but only once the passers-by called it to their attention.

bottle from the notice of the accident scene investigators, if nobody else. But for the passers-by, it is highly unlikely that the pill bottle would ever have come to their attention.[15]

Of these three possible constructions of the statute, I believe the first one—requiring concealment from *everyone*—does the least to accomplish the evident "object sought to be obtained" by the statute—to preserve physical evidence by deterring those who would purposefully compromise the integrity of an official investigation or proceeding. TEX. GOV'T CODE § 311.023(1). If an actor had to succeed in his objective to hide material evidence from *every* possible witness before his conduct could qualify as "concealment" under the statute, then, as a practical matter, almost no actor would ever be found guilty of actually tampering with evidence under a concealment theory. Any time the evidence might ultimately be discovered, the courts would declare that the most the defendant could have committed was attempted concealment because, at some point, the evidence would have been found.

By the other two interpretations of the statute—that an actor is guilty so long as he conceals from (1) *any* other person, or (2) at *least* from official investigators—I have already concluded that the evidence is sufficient to show that Appellant is guilty of actual, not merely attempted, tampering with physical evidence. Therefore, I need not decide which of those

---

[15] The Court seems to agree, readily conceding that the officers here would not likely have discovered the pill bottle unless the passers-by called both its location and its significance to their attention. Majority Opinion at 12. The Court declares, "What the witnesses saw and told law enforcement informs whether the physical evidence was concealed from law enforcement." *Id*. I suppose the Court means to suggest that whether the pill bottle was successfully concealed from law enforcement necessarily takes into account whether it was also successfully concealed from others who might be able to point it out to law enforcement.

two alternative constructions is correct for purposes of resolving the legal sufficiency issue here. Because a rational jury could have found Appellant removed the pill bottle—even temporarily—from the notice of the investigators who would conduct the pending or subsequent investigation, if nobody else, the evidence is sufficient to prove he "concealed" it.

**CONCLUSION**

I would hold that the evidence was legally sufficient to support the jury's finding that Appellant committed the offense of tampering with physical evidence in that he concealed a thing with intent to impair its availability as evidence in an investigation or official proceeding. Accordingly, I would reverse the judgment of the court of appeals and reinstate the judgment of the trial court. Because the Court does not, I respectfully dissent.


FILED:            April 22, 2020
PUBLISH